**NATIONAL INDEMNITY COMPANY,**
**Appellant,**

v.

**FARM BUREAU MUTUAL INSURANCE COMPANY, Respondent.**

No. C8–83–598.

Supreme Court of Minnesota.

May 25, 1984.

Henry A. Cousineau, Jr. and Mark A. Gwin, Minneapolis, for appellant.

Owen L. Sorenson and Kevin V. Ellis, St. Paul, for respondent.

## OPINION

TODD, Justice.

Farm Bureau Mutual Insurance Co. (Farm Bureau) recovered sums it had paid its no-fault insured from National Indemnity Company (National) the insurer of the defendant in an action brought by Farm Bureau's insured. Farm Bureau's recovery was in an arbitration proceeding under the No-Fault Act. The arbitration decision was rendered subsequent to a jury verdict which found that Farm Bureau's insured had sustained no damage. The trial court affirmed the award to Farm Bureau and also awarded it prejudgment interest. We affirm as to the damage award but reverse as to the award of interest.

On July 13, 1976, the car that David Peckels was driving was rear-ended by a taxi cab. The car was stopped at a red light at the time of the collision. Peckels submitted a claim for no-fault insurance benefits to Farm Bureau pursuant to the terms of his policy with that company. Farm Bureau paid Peckels $3,814.70 for medical bills and $10,000 for wage loss. The $10,000 paid by Farm Bureau was the policy limit.

Peckels then brought a negligence action against Southwest Cab Company seeking $100,000 in damages. The case was tried in September 1982 before a jury in Hennepin County District Court. Farm Bureau first sought to intervene in the action but then was allowed to withdraw when it learned it was required to go to arbitration to seek indemnification from National, the cab company's insurer, because a commercial vehicle was involved. Minn.Stat. § 65B.51, subd. 1.

Peckels' negligence suit resulted in a directed verdict of liability for the plaintiff. The jury, however, found by special verdict that Peckels had sustained no damages. The jury apparently found that Peckels' injuries were caused by accidents occurring before and after the collision with the cab.

Having withdrawn from the tort suit, Farm Bureau applied for arbitration in February 1982 pursuant to Minn.Stat.

§ 65B.53, subds. 1 & 4. National, insurer of the Southwest Cab Company, was the respondent in the arbitration action. Farm Bureau submitted Peckels' medical reports, records of the payments the company had made to Peckels, and other documentation to the arbitration panel. The panel on October 19, 1982 awarded Farm Bureau reimbursement from National for the full amount of benefits paid.

National, pursuant to Minn.Stat. § 572.-19 (1982), then filed a motion in Hennepin County District Court to vacate the arbitration award. Farm Bureau filed a cross-motion for an order confirming the award and seeking prejudgment interest. The trial court granted Farm Bureau's motion in an order dated January 24, 1983. The order included an award of $3,315.52 for prejudgment interest. National appeals from this order.

■ 1. National has the burden of proving the invalidity of the arbitration award. Only where the arbitrators have clearly exceeded their powers must a court vacate an award. *Hilltop Constr., Inc. v. Lou Park Apartments*, 324 N.W.2d 236, 239 (Minn.1982); *State v. Berthiaume*, 259 N.W.2d 904, 910 (Minn.1977). Every reasonable presumption is exercised in favor of the finality and validity of the award. *Mork v. Eureka-Security Fire & Marine Ins. Co.*, 230 Minn. 382, 391, 42 N.W.2d 33, 38 (1950).

The scope of the arbitrator's powers is set forth in the No-Fault Act. The applicable sections are:

Subdivision 1. A reparation obligor paying or obligated to pay basic or optional economic loss benefits is entitled to indemnity subject to the limits of the applicable residual liability coverage from a reparation obligor providing residual liability coverage on a commercial vehicle of more than 5,500 pounds curb weight if negligence in the operation, maintenance or use of the commercial vehicle was the direct and proximate cause of the injury for which the basic economic loss benefits were paid or payable to the extent that the insured would

have been liable for damages but for the deduction provisions of section 65B.51, subdivision 1.

Subd. 4. The right of indemnity provided in subdivision 1 shall be enforceable only through mandatory good-faith and binding arbitration procedures established by rule of the commissioner of insurance. These procedures shall utilize determinations of comparative negligence. No evidence nor the decision in such an arbitration proceeding shall be admissible in any action by any party.

Minn.Stat. § 65B.53, subds. 1, 4 (1982).

■ Appellant argues that the jury verdict absolutely precluded the arbitrators from compelling National to indemnify Farm Bureau. The major flaws in National's argument are in equating arbitration with court actions, on the one hand, and in trying to distinguish between arbitration by agreement and compulsory arbitration for purposes of applying the res judicata bar.

*Milwaukee Mutual Insurance Company v. Currier*, 310 Minn. 81, 245 N.W.2d 248 (1976) is controlling here. That case holds that a res judicata defense does not preclude arbitration proceedings solely because the underlying claim would be barred by res judicata if asserted in an action in court. 310 Minn. at 88, 245 N.W.2d at 251. National mistakenly reads the case to apply to arbitration by agreement but not to compulsory arbitration. However, the court clearly is comparing arbitration *in general* with court actions. Compulsory arbitration simply is not involved in the case and there is no reason to align it with court actions, to which the doctrine of res judicata would apply.

The purpose and history of the no-fault indemnity provision support the conclusion that the arbitration at issue here should be treated like private arbitration actions. As with private arbitration, no-fault arbitration was intended as a recourse totally separate from resort to the courts. As Professor Steenson explains: "The right of indemnity in the Minnesota Act exists inde-

pendently of the insured's tort action for damage." M. Steenson, *Minnesota No-Fault Automobile Insurance* 170 (1982). The reasons for this distinction are as follows:

> This use of arbitration is seen as an efficient, quick, and relatively inexpensive method of adjudicating indemnity claims. It removes such claims from an already overcrowded court system and the vagaries of a fair but probably unqualified jury. The setting instead is one where the participants are professionals in the field and fault can be determined strictly on the merits. Under such a system there need be no concern that a severely injured party will go uncompensated, for compensation has already taken place. Neither should there be any fear that a slightly injured party will be overcompensated. The dispute is between two insurance companies in an arbitration proceeding which is charged with the task of determining which insurer should bear a loss already fixed in amount.

Note, *Subrogation and Indemnity Rights Under the Minnesota No-Fault Automobile Insurance Act*, 4 Wm. Mitchell L.Rev. 119, 141 (1978).

The legislative history of the indemnity provision reveals an intent to insulate the arbitration process from judicial interference. Until August 1, 1977, section 65B.51, subd. 1 required that the tort thresholds be met and a civil suit for general damages be started before the insurer had any indemnity right. This made the right contingent on the injured party's institution of a civil action. In 1977 the statute was amended to broaden the insurer's right of indemnity. Now, the statute provides for arbitration without regard to actions taken or not taken by the insured.

This construction is also reflected in the rules adopted to effectuate the arbitration procedure. Most pertinent to the instant case is 4 MCAR § 1.9188C (1982) (currently codified at Minn.Rule 2770.5200(C) (1983)) which states: "A finding as to the amount of damages in issue shall be based on facts presented to the arbitrators."

■ National relies on common law indemnity cases for the principle that the arbitrators could not decide an issue of liability previously adjudicated in a court of law. *See Fidelity & Casualty Co. of New York v. Minneapolis Brewing Co.*, 214 Minn. 436, 440, 8 N.W.2d 471, 473 (1943); *American Motorists Ins. Co. v. Vigen*, 213 Minn. 120, 25–27, 5 N.W.2d 397, 398–99 (1942). These cases have no application where one of the proceedings is arbitration. As the court held in *Milwaukee Mutual*, the arbitrators may give whatever weight to the prior trial proceedings that they deem justified. 310 Minn. at 88, 245 N.W.2d at 252.

The United States Supreme Court has also noted recently that arbitration is not a judicial proceeding. *McDonald v. City of West Branch* — U.S. ——, 104 S.Ct. 1799, 80 L.Ed.2d —— (1984). Specifically, the Court decided that according preclusive effect to an arbitration award in a subsequent 42 U.S.C. § 1983 action would undermine the statute's goal of protecting federal rights. *Id.* 104 S.Ct. at 1803. Although the circumstances of *McDonald* were the opposite of those in this case, the case supports the principle that fact finding in judicial proceedings and in arbitration actions are independent.

Under usual circumstances, arbitration would be completed before the insured's tort action against a third party. The arbitrators would have no concern about the jury verdict in the tort action. To hold in this case that the jury verdict was conclusive upon the arbitrators would encourage litigants expecting a favorable verdict to stall out the arbitration process. This is contrary to the express purpose of the arbitration provision of the No-Fault Act, which is to "minimize the administrative expense and the burden on the judicial system * * *." Unif. Motor Vehicle Accident Reparations Act § 38, 14 U.L.A. 124–25, commentary at 129 (1980). As a New York court recognized, arbitration was added to the no-fault statute because "inter-compa-

ny loss transfers contribute to overhead costs and delays which are inconsistent with the basic objective of the no-fault system which is to eliminate costly investigations * * *." *20th Century Ins. Co. v. Lumbermen's Mut. Casualty Co.*, 80 A.D.2d 288, 290, 439 N.Y.S.2d 527, 528 (1981). The purpose of arbitration generally is to expedite the resolution of disputes and discourage litigation. *See Layne-Minnesota Co. v. Regents of the Univ. of Minn.*, 266 Minn. 284, 287–288, 123 N.W.2d 371, 374–75 (1963).

The No-Fault Act's goal of quickly compensating the injured person is a primary reason for keeping arbitration totally separate from court actions. Minn.Stat. § 65B.54 requires a reparation obligor to respond to claims. Benefits are payable monthly as loss accrues. The insurer must pay benefits within thirty days of receiving "reasonable proof of the fact and amount of loss realized." Minn.Stat. § 65B.54, subd. 1 (1982). An insurer who makes timely payments is not penalized by having to await the outcome of the insured's court action before seeking indemnity.

National's complaint really is that the arbitrators should have reached the same conclusion as the jury did, that the July 1976 accident did not cause the injuries for which Farm Bureau paid benefits. But National had the same opportunity to convince the arbitrators as they had with the jury. It can be argued that the arbitrators actually have superior expertise and *their* decision should be followed. However, the legislature has determined that the actions should be independent. That is why Minn. Stat. § 65B.53, subd. 4 (1982) provides: "No evidence nor the decision in such an arbitration proceeding shall be admissible in any action by any party."

■ Here, National has merely encountered conflicting findings from a jury and an arbitration panel. Even though the jury found that the *insured* had suffered no loss from the accident, the arbitrators found that *Farm Bureau* had suffered loss and was entitled to reimbursement. This award was properly confirmed by the district court.

■ 2. Farm Bureau's application for arbitration under the section entitled "Applicants Allegations" and, in particular, on the line entitled "Damages Claimed by Company" stated: "$13,8141.70 + *interest.*" (Emphasis supplied.) The award of the arbitration panel stated: "Applicant sustains his right to indemnity for reimbursement of benefits paid of $13,814.70." There was no award of interest.

Farm Bureau then moved the court "* * * for an order confirming the award of the arbitrators * * *." The motion also stated "That in addition thereto, Farm Bureau Mutual Insurance Company will move the Court for an award of prejudgment interest."

Both parties argue the issue of when prejudgment interest can be awarded. We conclude that issue was never properly before the trial court. Under the arbitration statute, chapter 572, when an award has been made, a party may apply for: a modification or correction of the award of the arbitrators, §§ 572.16 & .20; may seek an order confirming the award, § 572.18; or may seek to vacate the award, § 572.19. The function of the court is clearly defined in section 572.21 where it states:

> Upon the granting of an order confirming, modifying or correcting an award, judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree. Costs of the application and of the proceedings subsequent thereto, and disbursements may be awarded by the court.

The statute does not permit the court to award prejudgment interest where the application for arbitration included interest as an item of damage and none was awarded by the arbitrators. The proper procedure would have been to seek a modification or correction of the award under § 572.16.

The order of the trial court granting prejudgment interest to Farm Bureau is reversed.

Affirmed in part, reversed in part.

Neither party shall be allowed costs or disbursements in this court.