**Mary PATRIN, Relator,**

v.

**PROGRESSIVE REHAB OPTIONS and Lumbermen's Underwriting/Sedgwick James Co., Respondents.**

No. CX–92–1078.

Supreme Court of Minnesota.

March 12, 1993.

Charles M. Cochrane, John N. Renckens, Minneapolis, for relator.

Kirk C. Thompson, David J. Klaiman, Gilmore, Aafedt, Forde, Anderson & Gray, P.A., Minneapolis, for respondents.

COYNE, Justice.

This workers' compensation claim is before us by certiorari on the relation of Mary Patrin, the employee, to review a decision of the workers' compensation court of appeals reversing the compensation judge's award of benefits for temporary partial disability. We affirm the decision of the WCCA.

The employee sustained a compensable cervical injury on July 5, 1988. Her employer, Progressive Rehab Options, paid compensation for temporary total disability until January 1, 1991, when Patrin began working for a different employer, Community Involvement Programs, at a reduced wage. Progressive Rehab Options, the former employer, paid Patrin temporary partial benefits and when Patrin reached maximum medical improvement on May 2, 1991, Progressive paid impairment compensation for permanent partial disability based on 3.5% of the whole body and continued to pay benefits for temporary partial disability.

On September 9, 1991 Patrin was injured in an automobile accident that was unrelated to her work, and she has not since returned to work. Patrin is receiving basic economic loss benefits calculated on 85% of her wage at Community Involvement Programs. Progressive Rehab Options petitioned for leave to discontinue TPD benefits. The petition was approved at an administrative conference, but on Patrin's objection, the compensation judge ordered continuance of TPD benefits. The WCCA reversed.

The WCCA and the compensation judge based their decisions on differing interpretations of *Kirchner v. Anoka County*, 339 N.W.2d 908 (Minn.1983), *appeal after remand*, 410 N.W.2d 825 (Minn.1987). Based on the *Kirchner* rationale, the compensation judge ruled that since the no-fault benefits were being computed on wages at the post-work-injury job only, without regard to the wage reduction attributable to the work injury, liability for TPD benefits continued. The WCCA concluded, however, that *Kirchner*, which arose out of a subsequent compensable injury, is inapplicable when the subsequent injury is not compensable pursuant to the workers' compensation act.

The facts underlying the *Kirchner* decision differ significantly from those of the present case. Kirchner was employed by Anoka County on November 14, 1977 when he sustained a compensable back injury. Anoka County's workers' compensation in-

surer paid compensation for temporary total disability and permanent partial disability, and when Kirchner returned to work for Anoka County at a reduced wage, the insurer paid temporary partial disability benefits. On February 15, 1979 Kirchner sustained a second compensable injury, which caused a disability substantially greater as a result of Kirchner's pre-existing permanent partial disability from his 1977 injury. At the time of Kirchner's second compensable injury, Anoka County was insured by a different workers' compensation insurer.

Ultimately, we held that Kirchner was entitled to temporary partial disability benefits based on his wages at the time of his first injury in 1977 and temporary total disability benefits based on his wages at the time of his second injury in 1979, provided that the aggregate TPD and TTD benefits should not exceed the statutory maximum benefits for temporary total disability in force at the time of the second injury. *Kirchner v. Anoka County, supra*.

 At the time of Kirchner's injuries the workers' compensation act provided TPD benefits if the employee worked for a reduced wage after injury; if the employee searched diligently, but could find no job, TPD benefits were payable at the rate of TTD benefits. Minn.Stat. § 176.101, subd. 2 (1982). The 1983 revision of the workers' compensation act limited benefits payable for temporary disability: TTD benefits are not payable beyond 90 days after maximum medical improvement, and TPD benefits are payable only to a worker who is employed. *Morrissey v. Country Club Markets, Inc.*, 430 N.W.2d 169 (Minn.1988); *Tews v. Geo. A. Hormel & Co.*, 430 N.W.2d 178 (Minn.1988); *Parson v. Holman Erection Co.*, 428 N.W.2d 72 (Minn.1988). Recognizing, however, that *Kirchner* represented an equitable solution to a unique and troublesome problem with respect to the calculation of benefits, the WCCA ruled in *Floen v. Red Wing Publishing Co.*, 41 W.C.D. 1126, *aff'd without opinion*, 444 N.W.2d 845·(Minn.1989), and again in *Nybeck v. H.S. Kaplan Scrap Iron*, 42

W.C.D. 1169, *aff'd without opinion*, 461 N.W.2d 719 (Minn.1990), that the 1983 revision did not suspend or relieve liability for TPD benefits when a subsequent work-related injury disables the employee from working.

The factual difference, of course, between *Kirchner* and the present case is that here the second injury is unrelated to Patrin's employment. While *Kirchner* and its post–1983 progeny carry forward the workers' compensation policy of addressing the total diminution of earning capacity caused by the combination of two or more work-related injuries by awarding concurrent temporary benefits in amounts which are, in the aggregate, appropriate for the total diminution in earning capacity attributable to those injuries, there is in the present case no injury presently compensable pursuant to the workers' compensation act. Patrin has not worked for more than a year, and her inability to work is not related in any way to injury arising out of and in the course of employment—her inability to work is the result of an injury completely unrelated to her work. There is, therefore, no basis for requiring Patrin's former employer, Progressive Rehab Options, to continue to pay TPD benefits based on a wage Patrin no longer earns.

That Patrin is not entitled to workers' compensation benefits for temporary partial disability does not, however, mean that she should be forced to sacrifice a benefit for which she has paid premiums merely because her loss of wages represent only a part of the loss of income resulting from her inability to work. This is not a case like *Griebel v. Tri–State Insurance Company*, 311 N.W.2d 156 (Minn.1981), in which an employee who was temporarily totally disabled from a workplace injury, subsequently sustained an unrelated noncompensable injury which was alone totally disabling. In ruling that Griebel's loss should be apportioned between workers' compensation and no-fault benefits, we pointed out that both of Griebel's "injuries independently caused a disability that created an 'inability to work' and prevented the earning of income." *Id.* at 158. *See* Minn.Stat. §§ 65B.43, subds. 6–7, 65B.44,

subd. 3 (1990). Because the no-fault act provides that workers' compensation benefits are primary, Minn.Stat. §§ 65B.54, subd. 3, 65B.61, subds. 1–2 (1990), no-fault benefits were to be calculated on 85% of Griebel's average weekly wage less the amount of his workers' compensation benefits.

Patrin's workplace injury did not independently cause a disability that created an "inability to work" and prevent her from earning an income. Patrin was employed at the time of the automobile accident which has indeed created an inability to work and has prevented her from earning an income. At the time of the accident she was working for a wage, albeit at a lesser rate than her pre-workplace-injury wage, and she was receiving temporary partial disability benefits designed to compensate her for the reduction in her earning capacity as a result of her work-related injury. Because of the automobile accident she has lost not only her wages but also her temporary partial benefits. Although the no-fault act declares that workers' compensation benefits are primary, they can hardly be primary if they are not payable at all under the workers' compensation act. Furthermore, the no-fault act itself provides that a claim for basic economic loss benefits is to be paid without deduction for other benefits, including workers' compensation benefits, if these benefits have not been paid to the claimant before the reparation benefits are overdue or the claim is paid. Minn.Stat. §§ 65B.54, subd. 3, and 65B.61 (1990). Section 65B.54, subd. 3, goes on to provide for reimbursement of the no-fault obligor from an employer obligated to make the payments or from a claimant who actually receives them. Here, of course, it has been determined that Patrin's former employer is not obligated to pay benefits while she is disabled by reason of the automobile accident and she will not receive them. In short, we are of the opinion that the loss of income resulting from an automobile accident which disables a "person from working" includes both lost wages and workers' compensation

benefits for temporary partial benefits lost because of that person's inability to work.

Affirmed.

PAGE, J., took no part in the consideration or decision of this case.