**AMERICAN FAMILY INSURANCE GROUP, Petitioner, Respondent,**

v.

**JOSEPH UDERMANN, Appellant.**

**No. CX-00-2214.**

Court of Appeals of Minnesota.

July 17, 2001.

Review Denied Sept. 25, 2001.

---

William J. Cashman, LeAnne D. Bartishofski, Rajkowski Hansmeier LTD, St. Cloud (for respondent).

Michael D. Tewksbury, Tina M. Dobbelaere, Tewksbury Kerfeld Zimmer, Minneapolis (for appellant).

Considered and decided by KALITOWSKI, Presiding Judge, PETERSON and LINDBERG,* Judges.

## OPINION

PETERSON, Judge

After appellant Joseph Udermann was injured in a car accident in the course and scope of his employment, he was awarded medical expenses in a no-fault arbitration proceeding. Respondent American Family Insurance Company, the no-fault insurer, filed a motion in district court to vacate the part of the arbitration award covering chiropractic expenses, arguing that a prior settlement between Udermann and the workers' compensation carrier covered those expenses. This appeal is from the district court order granting American Family's motion. We affirm.

## FACTS

In July 1996, Udermann was injured in a car accident in the course and scope of his employment. In December 1997, Udermann and the workers' compensation carrier entered into a settlement for $31,500, which included $6,500 for attorney fees, plus costs and disbursements. The settlement agreement contains the following release and satisfaction clause:

[Udermann] agrees to accept said payments in full, final, and complete settlement and satisfaction of any and all past, present and future claims, known or unknown, related to his personal injury of July 24, 1996, *for chiropractic benefits,* pain clinic and pain management benefits, psychiatric or psychological benefits, health club including pool therapy, temporary total disability, temporary partial disability, permanent total disability, permanent partial disability, monitoring period compensation, retraining, rehabilitation, supplementary benefits under Minn.Stat. § 176.132, adjustment of benefits under Minn.Stat. § 176.645, claims under Minn.Stat. § 176.82, penalties, attorneys' fees, attorney fee reimbursement under Minn. Stat. § 176.081, subd. 7, costs, interest, and *any* other benefits to which he may be entitled under the Minnesota Workers' Compensation Act. Future non-chi-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

ropractic medical benefits are specifically left open subject to the defense of reasonableness and necessity and causal relationship.

(First emphasis added.) Udermann also agreed to resign from his employment and not seek re-employment with that employer in "further consideration of the [settlement] payments." When the workers' compensation carrier paid Udermann $25,000 pursuant to the settlement agreement, it issued a notice of benefit payment stating that the payment was for temporary total disability, temporary partial disability, permanent total disability, and permanent partial disability.

Up to the time of the settlement, Udermann had not received any chiropractic treatment. He began undergoing chiropractic treatment in April 1999. Udermann testified that he began undergoing chiropractic treatment at the recommendation of Dr. Matthew Monsein, who evaluated him in the fall of 1998.

Udermann filed a petition for no-fault arbitration seeking recovery of medical expenses, including charges incurred for chiropractic care. An arbitrator awarded Udermann $10,645.24 for medical expenses, which included $5,447 for chiropractic treatment at Lighthouse Chiropractic Health, and $1,469.16 for mileage. The arbitration award did not address the effect of the workers' compensation settlement on American Family's liability for payment of chiropractic expenses. The parties agree that American Family paid the arbitration award except for chiropractic treatment and related mileage expenses.

## ISSUE

Does the settlement between Udermann and the workers' compensation carrier preclude recovery of chiropractic expenses from American Family?

## ANALYSIS

■ Because of the perceived need for consistency in the interpretation of the No–Fault Act, no-fault arbitrators are limited to deciding questions of fact, leaving the interpretation of law to the courts. *Weaver v. State Farm Ins. Cos.*, 609 N.W.2d 878, 882 (Minn.2000). Statutory construction is a question of law subject to de novo review. *Hippe v. American Family Ins. Co.*, 565 N.W.2d 439, 441 (Minn. App.1997).

■ "To the extent that the No–Fault Act and the Workers' Compensation Act provide for compensation for personal injuries arising from motor vehicle accidents," the two acts are in pari materia and must be construed together. *Colonial Ins. Co. of Cal. v. Minnesota Assigned Risk Plan*, 457 N.W.2d 209, 210 (Minn.App.1990) (citation omitted), *review denied* (Minn. July 31, 1990). A presumption exists that the same general legislative policy underlies both acts and that together they "constitute a harmonious and uniform system of law." *Id.* (citation omitted); *see* Minn. Stat. § 65B.42 (2000) (purposes of No–Fault Act).

Minn.Stat. § 65B.61, subd. 1, states:

Basic economic loss benefits shall be primary with respect to benefits, except for those paid or payable under a workers' compensation law, which any person receives or is entitled to receive from any other source as a result of injury arising out of the maintenance or use of a motor vehicle.

*See also* Minn.Stat. § 65B.61, subds. 2–2a (2000) (disability income loss benefits and survivors' economic loss benefits are payable only to the extent that they exceed corresponding workers' compensation benefits).

A claim for basic economic loss benefits shall be paid without deduction for [workers' compensation] benefits which are to be subtracted pursuant to section 65B.61, if these benefits have not been paid to the claimant before the reparation benefits are overdue or the claim is paid. The obligor is entitled to reimbursement from the person obligated to make the payments or from the claimant who actually receives the payments.

Minn.Stat. § 65B.54, subd. 3 (2000).

■ Under the terms of the settlement, the workers' compensation carrier is not liable to pay for chiropractic expenses incurred by Udermann after the date of the settlement. Udermann argues that as a result of the settlement, his chiropractic expenses are no longer "paid or payable under a workers' compensation law." Therefore, continues Udermann, because the workers' compensation carrier is no longer available to pay those expenses, he should be allowed to recover them from American Family.

Udermann cites *Raymond v. Allied Property & Casualty Ins. Co.*, 546 N.W.2d 766 (Minn.App.1996), to support his argument. The Raymond court held that the no-fault insurer was obligated to pay its insured basic economic loss benefits that were due and had not yet been paid by the workers' compensation carrier. The court explained that because the obligation to pay workers' compensation benefits is often contested, the purpose of Minn.Stat. § 65B.54, subd. 3, is to provide prompt payment of economic loss benefits to the insured. *Id.* at 768. The court declined to decide the no-fault insurer's reimbursement rights because the workers' compensation benefits had not yet been paid, and, therefore, the issue of reimbursement rights was not properly before the court. *Id.*

In this case, in contrast to *Raymond,* Udermann's workers' compensation claim has been settled and the benefits paid according to the settlement agreement. The issue is whether Udermann, having entered into a settlement that defeats American Family's reimbursement rights as to chiropractic expenses, is still entitled to no-fault benefits for chiropractic expenses.

Udermann argues that the primary purpose of the No–Fault Act is to fully compensate injured persons and, therefore, American Family can only avoid paying chiropractic expenses if it proves that a specific dollar amount of the settlement was attributable to chiropractic expenses. We disagree. The legislature specifically designated workers' compensation benefits as primary with respect to no-fault benefits. Udermann entered into a settlement under which he expressly agreed to accept the settlement

payments in full, final, and complete settlement and satisfaction of any and all * * * future claims, known or unknown, related to his personal injury of July 24, 1996, for chiropractic benefits.

■ Udermann's contention that the notice of benefit payment shows that the settlement payment was not intended to compensate him for chiropractic expenses is not persuasive. Given the reference to chiropractic benefits in the settlement agreement, particularly in light of the express exclusion of "[f]uture non-chiropractic medical benefits," the only reasonable inference is that potential future chiropractic expenses were accounted for in the final settlement amount. Because workers' compensation benefits are primary with respect to no-fault benefits and because Udermann entered into a settlement with the workers' compensation carrier that compensated him for chiropractic expenses and defeated American Family's reim-

bursement rights, Udermann is precluded from recovering no-fault benefits for chiropractic expenses.

We reject Udermann's argument that our holding will discourage settlements. The only settlements that will be discouraged are those that would undermine the priority system between workers' compensation and no-fault benefits expressly determined by the legislature.

### DECISION

The district court properly concluded that the settlement with the workers' compensation carrier precluded Udermann from collecting no-fault benefits for chiropractic expenses. The district court properly vacated the part of the arbitration award covering chiropractic treatment and related mileage expenses.

**Affirmed.**