**In the matter of the arbitration between Cristian KLINEFEL-TER, Respondent,**

v.

**CRUM AND FORSTER INSURANCE COMPANY, Appellant.**

No. A03–895.

Court of Appeals of Minnesota.

Feb. 24, 2004.

Joseph F. Kueppers, Kueppers, Hackel & Kueppers, P.A., St. Paul, MN, for Respondent.

George C. Hottinger, Erstad & Riemer, P.A., Minneapolis, MN, for Appellant.

Cameron M. Parkhurst, Parkhurst Law Firm, Roseville, MN, for amicus curiae Minnesota Trial Lawyers' Association.

Considered and decided by SHUMAKER, Presiding Judge; and RANDALL, Judge; and SHUMAKER, Judge.

## OPINION

GORDON W. SHUMAKER, Judge.

Appellant insurance company challenges the judgment entered on the district court's order denying its motion to vacate an arbitrator's award and affirming the award of no-fault benefits to respondent, who was injured in an automobile accident during the course of his employment.

## FACTS

This is a no-fault insurer's appeal from the district court's denial of the insurer's motion to vacate a no-fault arbitration award.

Respondent Cristian Klinefelter is the insured. He was injured in an accident while driving his own vehicle in the performance of work for his employer, Quicksilver Express Courier. Safeco Insurance Company was Quicksilver's workers' compensation insurer. Appellant Crum and Forster Insurance Company provided no-fault insurance for Klinefelter's vehicle.

Safeco paid workers' compensation benefits to Klinefelter for several months and then terminated benefits because Klinefelter changed physicians without prior consent from Safeco in contravention of a workers' compensation rule. Klinefelter then claimed no-fault benefits from Crum and Forster. The claim was arbitrated, and the arbitrator found in Klinefelter's favor. Crum and Forster paid the award.

About a year later, Klinefelter filed another claim for workers' compensation benefits with the workers' compensation division, and he also requested permission to change physicians. Crum and Forster intervened, seeking reimbursement for the no-fault benefits it had paid. For various reasons, the workers' compensation court denied Klinefelter's claim and request and denied Crum and Forster's petition for reimbursement. The workers' compensation court of appeals affirmed. *Klinefelter v. Quicksilver Express Courier*, 2003 WL 465509 (Minn. Workers' Comp. Ct. Apps. Jan. 6, 2003).

Klinefelter then petitioned for no-fault arbitration of medical expenses and wage losses. Crum and Forster opposed any award. The arbitrator awarded a total of $8,267.98 to Klinefelter, and Crum and Forster moved the district court to vacate the award, arguing that the arbitrator had exceeded his powers by making a legal determination and that the no-fault claim was barred by collateral estoppel or res judicata. The district court denied the motion and confirmed the award, and Crum and Forster brought this appeal.

## ISSUES

1. Did the arbitrator exceed his authority by impliedly ruling that the workers' compensation court decision did not bar arbitration of the no-fault claim?

2. Was the injured individual barred by collateral estoppel or res judicata from arbitrating the no-fault claim after the workers' compensation court denied benefits?

## ANALYSIS

Crum and Forster argues that, under the no-fault law, workers' compensation benefits are primary and that once there has been a final denial of those benefits in the workers' compensation system, a claimant is barred from seeking the same benefits through no-fault insurance. The insurer contends that, although the arbitrator did not expressly make a legal determination, he did so impliedly by allowing the no-fault claim. And because legal determinations are not within an arbitrator's powers, to the extent the award was based on legal conclusions the insurer argues that it must be vacated.

■ Minnesota policy strongly favors the finality of arbitration awards. *Erickson v. Great Am. Ins. Cos.*, 466 N.W.2d 430, 432 (Minn.App.1991). Thus, a court may vacate an arbitration award only upon satisfaction of specific statutory grounds, one of which is that the arbitrator exceeded his authority. Minn.Stat. § 572.19, subd. 1(3) (2002). We determine de novo whether an arbitrator exceeded his authority. *State v. Berthiaume*, 259 N.W.2d 904, 909 (Minn.1977). The burden of establishing that the arbitrator exceeded his authority is on the party who challenges the award. *County of Hennepin v. Law Enforcement Labor Servs., Local No. 19*, 527 N.W.2d 821, 824 (Minn.1995). Any doubts about the scope of arbitrability are to be resolved in favor of the arbitration. *Johnson v. Piper Jaffray, Inc.*, 530 N.W.2d 790, 795 (Minn.1995).

■ Under Minnesota's No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–.71 (2002), an arbitrator has the authority to find facts and to apply the law to those facts in awarding, suspending, or denying no-fault benefits. *Gilder v. Auto–Owners Ins. Co.*, 659 N.W.2d 804, 807 (Minn.App.2003). An arbitrator's findings of fact are final. *Barneson v. W. Nat'l Mut. Ins. Co.*, 486 N.W.2d 176, 177 (Minn.App.1992). When applying the law to the facts, an arbitrator has authority to decide a legal question, but the arbitrator's legal determination is subject to de novo

review by the district court. *Gilder,* 659 N.W.2d at 807.

*Arbitrator's Authority*

■ Crum and Forster's argument is that Klinefelter was collaterally estopped or precluded by res judicata from obtaining a no-fault arbitration award after the workers' compensation court of appeals had made a final denial of the same benefits. The insurer's first argument relates to the arbitrator's implied legal determination that Klinefelter's no-fault claim was not barred by collateral estoppel. Collateral estoppel raises questions of both fact and law. *In re Trusts Created by Hormel,* 504 N.W.2d 505, 509 (Minn. App.1993), *review denied* (Minn. Oct. 19, 1993). The question of whether to apply or not to apply the doctrine of collateral estoppel is a legal issue. When that issue arguably is pertinent to an arbitration proceeding, the arbitrator necessarily must decide it to determine whether or not the arbitration may be held. The insurer's argument that the arbitrator here was not authorized to hold the arbitration because he thereby impliedly decided that collateral estoppel does not apply is both spurious and contradictory. Had the arbitrator ruled that, because of the workers' compensation determination, Klinefelter was collaterally estopped from bringing a no-fault claim, the arbitrator would thereby have decided a legal question. The only difference is that the legal question would have been decided in Crum and Forster's favor. As we have noted, an arbitrator has the authority to decide the applicability of the law, but the decision is subject to de novo review. *Gilder,* 659 N.W.2d at 807. Thus, the district court did not err in denying the insurer's motion to vacate the award on the ground that the arbitrator exceeded his authority.

*Applicability of Collateral Estoppel*

■ When a person is injured through the use of a motor vehicle while performing duties for an employer, it is possible that insurance coverage under both a workers' compensation policy and a no-fault policy could be triggered. In such a case, the law requires that workers' compensation benefits be paid first: "Basic economic loss benefits shall be primary with respect to benefits, except for those paid or payable under a workers' compensation law." Minn.Stat. § 65B.61, subd. 1 (2002).

■ Crum and Forster cites this statute for the proposition that Klinefelter is collaterally estopped from seeking no-fault benefits because he litigated essentially the same issues in the workers' compensation system and was denied benefits. Collateral estoppel precludes the re-litigation of an issue that a party has had a full and fair opportunity to litigate in a prior proceeding and as to which there has been final adjudication on the merits. *Aufderhar v. Data Dispatch, Inc.,* 452 N.W.2d 648, 650 (Minn.1990).

■ The effect of Crum and Forster's reading of this provision would be to treat workers' compensation benefits as both exclusive and final. Thus, a motor vehicle user in Klinefelter's situation would be required to proceed not first but only through the workers' compensation system and then to accept as final the benefits, if any, he is able to obtain there. And according to the insurer's reading, if there were, as here, no workers' compensation benefits payable, that would end the matter. The supreme court has commented on the untenability of this outcome: "Although the no-fault act declares that workers' compensation benefits are primary, they can hardly be primary if they are not payable at all under the workers' compensation act." *Patrin v. Progressive Rehab*

*Options*, 497 N.W.2d 246, 248 (Minn.1993). We could end here with a determination that the use of the word "primary" in the no-fault statute and the *Patrin* decision lead us inexorably to the conclusion that collateral estoppel does not preclude an injured claimant from seeking no-fault benefits after first seeking workers' compensation benefits. But there are also other reasons to reject Crum and Forster's position.

■■■■ The workers' compensation act and the no-fault act are to be read harmoniously. *Raymond v. Allied Prop. & Cas. Ins. Co.*, 546 N.W.2d 766, 767 (Minn.App. 1996), *review denied* (Minn. July 10, 1996). "The statutes, therefore, must be construed with reference to each other." *Colonial Ins. Co. v. Minn. Assigned Risk Plan*, 457 N.W.2d 209, 210 (Minn.App. 1990), *review denied* (Minn. July 31, 1990). And "[i]t is presumed that the same general legislative policy underlies the statutes." *Id.*

■■■ The acts share the general policy of providing to injured persons medical and wage loss compensation quickly and efficiently. The workers' compensation act is intended "to assure the quick and efficient delivery of indemnity and medical benefits to injured workers." Minn.Stat. § 176.001 (2002). A major purpose of the no-fault act is "to encourage appropriate medical and rehabilitation treatment of the automobile accident victim by assuring prompt payment for such treatment." Minn.Stat. § 65B.42(3) (2002).

In addition to construing the acts in terms of their shared purposes, we must read the no-fault act as coordinating its benefits in such a manner as to avoid overcompensation of the motor-vehicle user. The no-fault act was adopted in part "to provide offsets to avoid duplicate recovery." Minn.Stat. § 65B.42(5) (2002). In pursuit of this purpose, the legislature included in the no-fault act a section providing rules for coordinating benefits payable under the no-fault act with those payable through the workers' compensation law. Minn.Stat. § 65B.61 (2002). There would be no reason to coordinate benefits if an injured person such as Klinefelter were entitled to receive only workers' compensation benefits. And the supreme court recognized that a no-fault insurer must pay benefits even if there might be workers' compensation coverage: "[A] no-fault reparation obligor [must] pay benefits such as medical expense and income loss before they become overdue, regardless of what might be the ultimate outcome of the workers' compensation claim." *Record v. Metro. Transit Com'n*, 284 N.W.2d 542, 545 (Minn.1979).[1] If a no-fault insurer overpays, it is entitled to reimbursement from the workers' compensation carrier or the insured. Minn.Stat. § 65B.54, subd. 3 (2002).

When read together in the context of their general policies and coordination features, the workers' compensation act and the no-fault act provide a system through which a person who is injured while using his own motor vehicle in his work for an employer must seek benefits first from a

1. We recognize that the legislature nullified the rule in *Record* in which the supreme court allowed stacking of no-fault and workers' compensation benefits. *See* 1980 Minn. Laws ch. 539 §§ 2, 3 (amending Minn.Stat. § 65B.61, subds. 1, 2, to prevent stacking of no-fault and workers' compensation benefits in excess of $200 a week); *Hoben v. City of*

*Minneapolis*, 324 N.W.2d 161, 162–63 (Minn. 1982) (noting that legislature superseded rule in *Record* that allowed for stacking of no-fault and workers' compensation benefits). By amending the statute, the legislature did not, however, alter the general purpose of the statute, for which we cite the *Record* case here.

responsible workers' compensation insurer. He can then look to his no-fault insurer for benefits not already provided, subject, of course, to statutory and policy limitations. If some workers' compensation benefits are already being provided but do not fully compensate him, he might yet make a claim for the uncompensated items against his no-fault carrier.

In addition to the plain language of the no-fault statute making workers' compensation benefits only primary and not exclusive, and the policy considerations underlying the workers' compensation and no-fault laws, collateral estoppel does not apply because Klinefelter did not have a full and fair opportunity to litigate the identical issue in both forums, as required for an estoppel bar. *See, e.g., Heine v. Simon,* 674 N.W.2d 411 (Minn.App.2004) (holding that collateral estoppel does not apply and an injured claimant is not precluded from recovering damages in a tort action for a claim for lost wages after a workers' compensation determination that wage loss was not caused by the claimant's accident). The statutory schemes, substantive rules, and procedural limitations of the respective acts are sufficiently dissimilar that only in the broadest and most abstract sense can it be said that the claims in the two forums were identical.

In this regard, we find *Nat'l Indem. Co. v. Farm Bureau Mut. Ins. Co.,* 348 N.W.2d 748 (Minn.1984), instructive. The supreme court held that an arbitrator enforcing an insurer's right to indemnity under the no-fault act was not bound by factual findings of a jury in a prior tort action. *Id.* at 751. The court noted that "fact finding in judicial proceedings and in arbitration actions are independent." *Id.* (citing *McDonald v. City of W. Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984)). Although *Nat'l Indem. Co.* dealt with the alleged preclusive effect of

findings in a prior tort action, we see no meaningful distinction in principle between that case and the attempt here to bind the arbitrator to the formal decision of the workers' compensation court of appeals.

## Applicability of Res Judicata

Res judicata precludes the relitigation of entire claims rather than just specific issues. *Hauser v. Mealey,* 263 N.W.2d 803, 806 (Minn.1978). We have already noted that the issues before the workers' compensation court and the arbitrator, having arisen under different substantive and procedural rules, were not sufficiently identical to permit a collateral-estoppel effect. The same reasons apply to the res judicata argument. The workers' compensation claim and the no-fault claim were not identical, and the litigation of the claim in the workers' compensation forum did not provide a full and fair opportunity to litigate the no-fault claim.

## Appellant's Case Authorities

We have carefully considered the primary cases that Crum and Forster relies on here, and we find them to be inapplicable. First, in *Am. Family Ins. Group v. Udermann,* 631 N.W.2d 424 (Minn.App. 2001), *review denied* (Minn. July 17, 2001), an injured employee entered into a settlement agreement with the workers' compensation carrier that precluded further recovery, including future chiropractic benefits. *Id.* at 425. When the employee filed a no-fault claim for chiropractic expenses incurred after the settlement agreement, this court determined that, because workers' compensation is generally primary and the settlement agreement contemplated future chiropractic costs, any no-fault benefits would duplicate the employee's recovery. *Id.* at 428. Because one of the purposes of the no-fault act is to provide offsets to avoid duplicate recovery,

when an employee receives benefits under both systems, the no-fault benefits are reduced by the amount of workers' compensation benefits paid. *Griebel v. Tri–State Ins. Co.*, 311 N.W.2d 156, 159 (Minn.1981). In this case, there is no duplication of benefits because the workers' compensation carrier has not paid (has in fact denied) Klinefelter's request for medical expenses; nor has there been a settlement agreement with the workers' compensation carrier contemplating all future benefits.

Crum and Forster also relies on a New Hampshire case in which the court determined that collateral estoppel barred an injured motorist from relitigating causation against her insurance carrier in a common-law action for negligence after the workers' compensation court and the compensation appeals board had previously decided against the motorist and had found that her physical and psychiatric condition were not caused by the automobile accident. *Farm Family Mut. Ins. Co. v. Peck*, 143 N.H. 603, 731 A.2d 996, 998–99 (N.H. 1999). We are not, however, bound by the holding of the New Hampshire court. *Farm Family* did not involve statutorily required arbitration proceedings, as here, but rather dealt with a common-law claim of negligence. *See* Minn.Stat. § 65B.525, subd. 1 (2002) (mandating arbitration of no-fault claims of $10,000). Unlike the New Hampshire court, we must adhere to the statutory requirements of and policy behind Minnesota's no-fault act.

 Finally, the insurer emphasized in oral argument that if it were not held that the workers' compensation decision has preclusive effect on the arbitrability of the no-fault claims, the insurer as reparation obligor would have no opportunity for reimbursement as provided in Minn.Stat. § 65B.54, subd. 3 (2002) (stating that the obligor is entitled to reimbursement for certain no-fault payments). And, accord-

ing to the insurer, the absence of a reimbursement source supports its estoppel argument. We are not aware of any authority, and the insurer has cited none, that provides that insurance coverage is conditional on the carrier's opportunity to recover reimbursement for benefits paid to an insured under an insurance policy. When a person buys an insurance policy, he is entitled to unconditional coverage as long as any claim satisfies the requirements of the policy, irrespective of whether the insurer can ever recoup its payments from another source.

## DECISION

The no-fault arbitrator did not exceed his authority in awarding no-fault benefits after a workers' compensation court denied workers' compensation benefits, because the workers' compensation and no-fault statutes are two different sets of laws with different purposes and standards and the findings by a workers' compensation court are not binding on a no-fault arbitrator. There is no rule that, if the secondary carrier cannot obtain reimbursement, an injured person entitled to benefits will not receive coverage.

**Affirmed.**