*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0763**

State Farm Insurance Companies,
Respondent,

vs.

Jolene Wuorenma,
Appellant.

**Filed November 16, 2015
Affirmed
Chutich, Judge**

Hennepin County District Court
File No. 27-CV-14-17026

Kelly F. Sofio, Oskie & Sofio, PLLC, St. Paul, Minnesota (for respondent)

Isaac I. Tyroler, TSR Injury Law, Bloomington, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Chutich, Judge; and Hooten, Judge.

## U N P U B L I S H E D   O P I N I O N

**CHUTICH**, Judge

Appellant Jolene Wuorenma contends the district court erred by vacating a no-fault arbitration award in her favor, based on its determination that a settlement she entered into with her workers' compensation carrier precluded her later recovery of no-fault benefits. Because the workers' compensation settlement was final at the time of the

no-fault arbitration, and because the settlement's global release barred recovery of similar no-fault benefits, we affirm.

## FACTS

On February 3, 2011, appellant Jolene Wuorenma was rear-ended and injured while driving her car in the scope of her employment with State Farm Insurance Companies. Wuorenma's initial medical bills were paid by State Farm's workers' compensation insurance. In February 2012, State Farm arranged an independent medical examination of Wuorenma, after which it denied Wuorenma's ongoing claims under the workers' compensation policy.

In November 2013, Wuorenma initiated a claim for additional workers' compensation benefits against State Farm as her employer and its workers' compensation insurance carrier. She also sought benefits from State Farm as her no-fault automobile insurance carrier for ongoing medical costs and lost wages. No-fault benefits were denied on the basis of medical evidence.

On February 10, 2014, Wuorenma filed a Petition for No-Fault Arbitration with the American Arbitration Association. She presented claims for $59,093 in medical expenses, although the policy only provided coverage up to $20,000. Wuorenma also presented $2,497 in wage-loss claims, which the policy provided for separately.

Between February 2012 and February 2014, Wuorenma was examined on several occasions by different doctors contracted by one or both insurance carriers.[1] In March

---

[1] Because we do not have the record from the workers' compensation case or details from the early phases of the no-fault claim dispute, we rely on information about

2

2012, one doctor opined that Wuorenma's ongoing workers' compensation claims were not reasonable, necessary, or related to the accident. Another doctor warned that a proposed spine surgery was unnecessary and "entirely inconsistent with the severity of the injury sustained during the accident in question and the condition which is alleged to have been caused by that event." He added that Wuorenma's complaints were "far out of proportion to the pathology which has been demonstrated by imaging studies." The same doctor conducted another examination in January 2014, including neurologic and orthopedic tests, and found normal results. Finally, he opined that only the first six weeks of care would have been reasonably related to the accident.

On February 26, 2014, State Farm, as no-fault insurer, served Wuorenma with a "notice of maximum medical improvement." State Farm's doctor opined that Wuorenma achieved her maximum medical improvement from injuries resulting from the February 3, 2011 accident no later than March 13, 2011. Wuorenma nonetheless underwent cervical spine surgery at St. John's Hospital on July 21, 2014. The cost of the surgery was $38,790.

About three weeks after the spine surgery, Wuorenma signed a stipulation for settlement on the workers' compensation claim, which did not reference the July 21 surgery bill. Wuorenma and her attorney signed the settlement agreement on August 12, 2014; the attorney for State Farm, as Wuorenma's employer and its workers' compensation insurance carrier, signed on September 19, 2014; two chiropractic clinics

Wuorenma's medical records and the insurers' medical reports from briefs and other secondary-source documents that are included in the record.

3

and the Center for Diagnostic Imaging also participated and signed as intervenors in the agreement on or before September 19, 2014. Apparently no party notified St. John's Hospital or furnished the spine surgery bill.

The stipulation for settlement was submitted to the Office of Administrative Hearings on September 22, 2014. A compensation judge signed and issued an award the next day. The total award under the workers' compensation settlement agreement was $38,318, which included $7,000 in attorney's fees and about $3,318 in other specified medical bills.

The settlement agreement explicitly provided:

> It is the intent of the parties hereto to permanently close out any and all known or reasonably discovered injuries that occurred during the employee's work for the employer…
>
> …
> [T]he employee agrees to accept the foregoing sums as a full, final and complete settlement of any and all claims, past, present and future, she may have…including…medical expenses: past, present and future; all forms of treatment… and any and all other conceivable claims the employee may have pursuant to the Minnesota Workers' Compensation Act without exception. **NO CLAIMS REMAIN OPEN. ALL MEDICAL CLAIMS ARE CLOSED ON A FULL AND FINAL BASIS, PAST, PRESENT AND FUTURE.**

The settlement agreement reflects that Wuorenma was considering a "recommended cervical spine surgery," but the final agreement does not reflect that the surgery had *already happened* at the time of signing by each party. Finally, the settlement agreement clearly provides that Wuorenma waived her right to a hearing on the merits of her claims.

Also on September 22, 2014, Wuorenma and State Farm, as no-fault insurance carrier, participated in an arbitration hearing. Wuorenma disclosed the workers'

4

compensation settlement at the arbitration hearing. Wuorenma's attorney in the no-fault claim was aware of the settlement but admitted that he did not know its "status" at the time of the arbitration. The attorney representing State Farm as no-fault insurance carrier at the arbitration was apparently unaware of the workers' compensation settlement before the arbitration.[2]

Following the hearing, the arbitrator invited written arguments about the legal effect of the workers' compensation settlement on the no-fault arbitration. Wuorenma's attorney argued that Wuorenma's eligibility for no-fault benefits was unaffected by the settlement because it was "not a fully-executed, filed, approved agreement" since it had not been signed by a compensation judge at the time of the no-fault arbitration hearing. Wuorenma's attorney additionally argued that State Farm would remain liable for the outstanding bill at St. John's Hospital, notwithstanding a finalized settlement, because St. John's was not properly notified of its right to intervene in the workers' compensation settlement. State Farm's attorney argued that the settlement was effective and final at the time of the arbitration and that it closed out any outstanding claims against State Farm, including the outstanding bill at St. John's Hospital. The $38,790 spine surgery bill was included as an exhibit at arbitration.

The no-fault arbitrator issued an award and memorandum on September 24, 2014, awarding the $20,000 coverage limit for medical expenses plus $2,497 in wage-loss benefits in favor of Wuorenma. But the arbitrator stated that the award was "intended to

---

[2] Both parties had separate attorneys for the workers' compensation settlement and the no-fault arbitration.

5

serve merely as a factual determination as to the merits of the claims under the No-Fault Act" and declined to make a determination on the contested effect of the settlement, stating that it "may amount to a legal question."[3]

State Farm, as no-fault insurance carrier, then moved in district court to vacate the arbitration award, contending that the workers' compensation settlement was final at the time of arbitration and barred later recovery of no-fault benefits. Wuorenma argued that none of the statutory grounds to vacate the arbitration award were met, that her no-fault claims survived the settlement because benefits were "due" before the workers' compensation settlement was complete, and that St. John's Hospital remains entitled to recover on the outstanding surgery bill because it was not given proper notice of the settlement negotiations.[4]

The district court issued an order granting State Farm's motion to vacate. Wuorenma appeals.

## D E C I S I O N

The interpretation of statutes and the application of statutes and administrative rules to undisputed facts are legal matters, which are reviewed de novo. *See Swenson v.*

---

[3] While arbitrators in automobile reparation matters have been in the past strictly limited to deciding questions of fact, *see Johnson v. American Family Mut. Ins. Co.*, 426 N.W.2d 419, 421 (Minn. 1988), more recent case law has clarified that "an arbitrator need not refrain from deciding a question simply because it is a legal question." *Gilder v. Auto-Owners Ins. Co.*, 659 N.W.2d 804, 807 (Minn. App. 2003). Under the contemporary framework, if an arbitrator decides a legal question, that determination is subject to de novo review by the district court. *Id.* Here, the district court answered the legal question identified by the arbitrator.

[4] St. John's Hospital is not a party to this appeal or to the underlying proceedings.

*Nickaboine*, 793 N.W.2d 738, 741 (Minn. 2011); *City of Morris v. Sax Invs.,* 749 N.W.2d 1, 5 (Minn. 2008).

## I.      Status of the Workers' Compensation Settlement Agreement at the Time of the No-Fault Arbitration

Wuorenma argues that the workers' compensation settlement was not binding at the time of the no-fault arbitration because it had not yet been approved by the compensation judge and because of the exclusion of St. John's Hospital.  The factual record and pertinent legal authority show otherwise, however.

Minnesota courts have long held that settlement agreements are contractual in nature and enforceable upon the mutual assent of the parties.  *Voicestream Minneapolis, Inc. v. RPC Properties, Inc.*, 743 N.W.2d 267, 271 (Minn. 2008) (citing *Mr. Steak Inc. v. Sandquist Steaks, Inc.*, 309 Minn. 408, 410, 245 N.W.2d 837, 838 (1976)).  Specifically regarding workers' compensation settlements, a statute provides that an agreement is valid where it has been executed in writing and signed by the parties and intervenors.[5] Minn. Stat. § 176.521, subd. 1(a) (2014).  Approval of a settlement by a compensation judge only becomes relevant to the agreement's binding effect when one of the parties is not represented by an attorney.  *Id.*  Since both parties were represented by attorneys here, and all parties and intervenors had signed the workers' compensation settlement agreement by September 19, 2014, three days before the no-fault arbitration hearing, the agreement was binding at the time of arbitration.

---

[5]  Although St. John's Hospital should have been notified of the settlement negotiations, there is no dispute that St. John's did not participate as intervenor.

Wuorenma next argues that the workers' compensation settlement is not binding because of the failure to include St. John's Hospital in the agreement. She cites caselaw to assert that an intervenor excluded from settlement negotiations is entitled to reimbursement. *See Brooks v. A.M.F., Inc.*, 278 N.W.2d 310, 315 (Minn. 1979) and *Stage v. Lion's Tap, Inc.*, 55 W.C.D. 208, 215 (Minn. Workers' Comp. Ct. App. 1996). While this principle may be true,[6] it does not support Wuorenma's position that she should be allowed to collect no-fault benefits. Parties to a workers' compensation settlement have a duty to notify potential intervenors, and, in fact, the rules provide for sanctions when they fail to do so. Minn. R. 1415.1100, subps. 1–2, 4 (2013); Minn. R. 1420.3700, subp. 1 (2013). Wuorenma has cited no authority to show that she is released from her obligations and limitations under the settlement agreement based on her own failure to notify St. John's Hospital of the workers' compensation proceedings.[7]

---

[6] An interested party has a right to intervene in a workers' compensation appeal and, if wrongly excluded, can act on its own behalf to seek reimbursement following a final order from a compensation judge. Minn. Stat. § 176.361, subd. 1 (2014); Minn. R. 1420.1850, subp. 4 (2013); s*ee also Gamble v. Twin Cities Concrete Prod.*, 852 N.W.2d 245, 249 (Minn. 2014); *Sang N. Lam v. Dana Corp.*, 60 W.C.D. 348, 352-53 (Minn. Workers' Comp. Ct. App. 2000). Here, neither party indicates whether St. John's Hospital is yet aware of the settlement, has attempted to intervene, or has made any collection efforts.

[7] The workers' compensation settlement in this case, for example, explicitly stated: "*The employee and her attorney…*acknowledge that, pursuant to Minn. Rule 1415.1100, subp. 2, all known potential intervenors and providers have been placed on notice of their right to petition for intervention and reimbursement." (Emphasis added.) By Wuorenma's own admission, this acknowledgment was not correct.

**II.    Effect of the Global Workers' Compensation Settlement Agreement on the Later No-Fault Arbitration Award**

Wuorenma argues that the district court erred by applying *American Family Ins. Group v. Udermann* to find that her release of workers' compensation claims extinguished her related no-fault claims. *See* 631 N.W.2d 424 (Minn. App. 2001), *review denied* (Minn. Sept. 25, 2001). Because we agree that *Udermann* is controlling authority, we affirm the district court's vacation of the arbitration award.

Workers' compensation and no-fault insurance interact when a person is injured while driving her personal vehicle within the scope of her employment, and under such circumstances the laws governing each must be construed together. *Colonial Ins. Co. of Cal. v. Minn. Assigned Risk Plan*, 457 N.W.2d 209, 210 (Minn. App. 1990), *review denied* (Minn. July 31, 1990). "A presumption exists that the same general legislative policy underlies both acts and that together they constitute a harmonious and uniform system of law." *Udermann*, 631 N.W.2d at 426 (quotation omitted).

Workers' compensation benefits are primary, but a no-fault insurer must provide benefits when workers' compensation is disputed or delayed. Minn. Stat. § 65B.54, subd. 3 (2014). When workers' compensation benefits are in dispute, no-fault benefits must be initially disbursed without regard for anticipated workers' compensation payments, and the no-fault insurer can later seek reimbursement from the workers' compensation carrier if appropriate. *Id.* Among the stated purposes of the Minnesota No-Fault Act are to relieve uncompensated accident victims, to prevent overcompensation, and to speed the

administration of justice. Minn. Stat. §§ 65B.41-.71 (2014) (No-Fault Act); § 65B.42 (Purpose).

*Udermann* is on point because it addresses the effect of a prior related workers' compensation settlement upon a later arbitration award. In *Udermann*, the plaintiff was injured at work and then settled a workers' compensation claim. The settlement agreement specified that the payments were "in full, final, and complete settlement and satisfaction of any and all . . . future claims, known or unknown, related to [Udermann's] personal injury . . . for chiropractic benefits." 631 N.W.2d at 427. Udermann then received chiropractic treatments and was subsequently awarded benefits for the additional chiropractic treatments through a no-fault arbitration. *Id.* at 426. The district court vacated the arbitration award and this court affirmed, holding: "Because workers' compensation benefits are primary with respect to no-fault benefits and because Udermann entered into a settlement with the workers' compensation carrier that compensated him for chiropractic expenses and defeated [the insurer's] reimbursement rights, Udermann is precluded from recovering no-fault benefits for chiropractic expenses."[8] *Id.* at 427–28.

Applying these principles here, Wuorenma is not entitled to benefits because she settled her workers' compensation claims before the no-fault arbitration took place. She

---

[8] Our court later qualified this holding in *Klinefelter v. Crum & Forster Ins. Co.*, by clarifying that no-fault insurance coverage is *not* conditioned upon the insurer's opportunity to obtain future reimbursement. 675 N.W.2d 330, 337 (Minn. App. 2004). Rather, a district court must determine whether the injured person is entitled to benefits without regard to the insurer's likelihood of reimbursement. *Id.* This clarification does not affect Wuorenma's case, however.

chose to settle her workers' compensation claim on a "full, final and complete" basis, unambiguously closing out "any and all claims, past, present and future . . . <u>without exception.</u>"  As in *Udermann,* the settlement agreement preceded her no-fault arbitration and expressly released the claims that she later pursued in the no-fault arbitration. *Udermann* is the most apposite precedential case and is consistent with the construction and purpose of the statutory scheme.  Under this controlling authority, the district court properly vacated the arbitration award.

Wuorenma attempts to avoid the holding of *Udermann* by relying upon *Raymond v. Allied Property & Cas. Ins. Co.*, 546 N.W.2d 766 (Minn. App. 1996), *review denied* (Minn. July 10, 1996).  But as the district court correctly noted, *Raymond* is factually distinguishable from the present case because in *Raymond* a no-fault arbitration award was rendered *before* the related workers' compensation settlement was reached.

Wuorenma also argues that she should be allowed to recover under the No-Fault Act for benefits that were "due" *before* the workers' compensation settlement was executed.  She cites *Wolf v. State Farm Ins. Co.* for the proposition that no-fault benefits are "due" when reasonable proof of loss is provided to the insurer.  450 N.W.2d 359, 362 (Minn. App. 1990), *review denied* (Minn. Mar. 16, 1990).

*Wolf* and its progeny, as cited by Wuorenma, do not shed light on *when* no-fault benefits are due.  Rather, *Wolf* addresses the shifting burden of proof under the no-fault act.  *Id.* (holding that if the no-fault insurer "received reasonable proof of Wolf's losses, the burden was on it to establish Wolf was not entitled to benefits") (citing *Ruppert v.*

11

*Milwaukee Mut. Ins. Co.*, 392 N.W.2d 550, 556–57 (Minn. App. 1986), *review denied* (Minn. Oct. 22, 1986)).

As to timing of benefits, section 65B.54 clearly and simply states that benefits are "payable" on a monthly basis as actual economic losses are incurred, and that benefits become "overdue" thirty days after reasonable proof of loss has been provided to the insurer. Minn. Stat. § 65B.54, subd. 1. The statute does not specify precisely when benefits are "due." Wuorenma's proposed reading of *Wolf* leads to the illogical conclusion that in any case where an insurer and an insured dispute the validity of a no-fault claim, any claim more than thirty days old is resolvable only in favor of the insured and is tacitly exempt from a negotiated settlement pertaining to those same expenses, regardless of the merits of the claims or arguments. No authority supports such a reading.

**Affirmed.**