David Albert **BUTZER**, et al., Appellants,

v.

**ALLSTATE INSURANCE COMPANY,** Respondent.

No. C3–97–244.

Court of Appeals of Minnesota.

Aug. 12, 1997.

Mark N. Stageberg, Minnetonka, for Appellants.

Eric J. Magnuson, Louise Dovre Bjorkman, Joseph S. Lawder, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, for Respondent.

Considered and decided by CRIPPEN, P.J., and HUSPENI and WILLIS, JJ.

## OPINION

CRIPPEN, Judge.

In this underinsurance benefits action, appellants David and Norita Butzer dispute the trial court's summary judgment that collaterally estops them from claiming damages greater than those awarded in a prior binding arbitration between appellants and the tortfeasor's liability insurer. We affirm.

## FACTS

In 1992, appellant David Butzer sustained serious injuries when his vehicle collided with one driven by Mark Krueger, whose liability insurance policy had a $50,000 limit. Although Krueger's insurance company acknowledged liability, it only offered appellants a $35,000 settlement. Appellants and Krueger's insurer voluntarily entered into binding arbitration. Appellants contend that they did not present all necessary damage evidence to the arbitrator because their attorney believed he only needed to prove $50,000 in damages. The arbitrator found that appellants had suffered damages in the amount of $75,000.

Appellants brought an action to recover underinsured motorist benefits from respondent Allstate Insurance Company. Respondent moved for summary judgment that appellants could recover underinsurance benefits of no more than $25,000, alleging that the arbitration award estopped appellants from asserting more than $75,000 in damages. The trial court awarded summary judgment on respondent's motion.

## ISSUE

Are appellants estopped from recovering underinsurance benefits of more than $25,000?

## ANALYSIS

■ On appeal from summary judgment, the appellate court determines whether any genuine issues of material fact remain and whether the trial court misapplied the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). The availability of collateral estoppel is a mixed question of law and fact subject to de novo review. *Falgren v. State,*

*Bd. of Teaching,* 545 N.W.2d 901, 905 (Minn. 1996).

The collateral estoppel question in this case is one of first impression in Minnesota. Several cases have come close to deciding this issue, and they suggest that collateral estoppel applies both to trial court judgments and to prior arbitrations. *Employers Mut. Cos. v. Nordstrom,* 495 N.W.2d 855, 858–59 (Minn.1993) (stating that if the tort judgment damages exceed the tort insurance limits, "the excess is payable by the underinsurer" to the extent of its coverage without the need for redetermining damages); *Costello v. Aetna Cas. & Sur. Co.,* 472 N.W.2d 324, 326–27 (Minn.1991) (applying collateral estoppel to prevent an injured driver, who already had received a jury verdict against the other driver, from relitigating the issue of damages in a subsequent proceeding to determine whether he may invoke underinsured motorist coverage); *Aufderhar v. Data Dispatch, Inc.,* 452 N.W.2d 648, 651–53 (Minn.1990) (applying collateral estoppel to bar an injured driver, who already had arbitrated his uninsured motorist benefits claim against his insurer, from relitigating the amount of his damages in a subsequent tort action against another driver).

■ We find no reason or authority supporting the conclusion that these cases should not be extended to the circumstances present in this case. When injured motorists obtain an arbitration award against the tortfeasors or the tortfeasors' liability insurer, the arbitral decision may collaterally estop both the injured drivers and their underinsured motorist carriers from relitigating the damages issue. "[I]t is well settled that arbitration is meant to be a final judgment of both law and fact." *Johnson v. Consolidated Freightways, Inc.,* 420 N.W.2d 608, 613 (Minn.1988). We note that the underinsured motorist carrier should receive notice of, and an opportunity to participate in, the insured's personal injury claim. *Malmin v. Minnesota Mut. Fire & Cas. Co.,* 552 N.W.2d 723, 728 (Minn.1996).

■ Appellants all but concede that the elements of collateral estoppel have been met. To invoke collateral estoppel, a party

must establish (1) that both the present and prior action presented the "identical" issue, (2) that the prior adjudication was "a final judgment on the merits," (3) that the estopped party was a party, or in privity with a party, in the prior adjudication, and (4) that the estopped party received "a full and fair opportunity to be heard" on the adjudicated issue. *Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn.1982). Both the prior arbitration and this case present an "identical" damages issue because the arbitrator determined the full amount of damages suffered by appellants. The arbitration award also was a final judgment on the merits because we afford arbitration decisions finality as to both facts and law. *Aufderhar*, 452 N.W.2d at 651; *Johnson*, 420 N.W.2d at 613. Appellants were parties to both actions. Finally, appellants received a "full and fair opportunity to be heard" because the same attorney represented appellants in both proceedings, the arbitration agreement provided for discovery under the Minnesota Rules of Civil Procedure, an experienced attorney served as the arbitrator, and appellants do not claim that the arbitrator denied them the opportunity to present any relevant evidence on the issue of damages. *Aufderhar*, 452 N.W.2d at 652 (finding "no doubt" that claimant received a full and fair opportunity to present damages evidence when the same attorney represented the claimant at the arbitration and at trial, the legal rules of procedure and evidence governed the arbitration, experienced personal injury attorneys arbitrated the case, and claimant made no assertion that arbitrators denied him the opportunity to present any damages evidence).

Ultimately, appellants contend that the circumstances in the underinsured motorist context are unique, such that arbitration results should not be binding on the subsequent action to recover underinsurance benefits, for the following reasons: (a) when pursuing an insured tortfeasor's claim with the knowledge of the reserve underinsured motorist claim, litigants, such as appellants, have no motivation to recover damages in excess of tortfeasor's liability limit; (b) if the award limits underinsurance benefits, the parties will be compelled to engage in more concentrated litigation in the tortfeasor claims, unnecessarily encumbering them with evidence regarding the full extent of the litigants' injuries; and (c) most importantly, the application of the doctrine will produce unjust results if underinsured motorist carriers are free to relitigate the damages issue. With these considerations in mind, appellants note that collateral estoppel is a "flexible doctrine" that is "not rigidly applied," *Johnson*, 420 N.W.2d at 613–14, and that a court should reject the doctrine when its "application would contravene an overriding public policy," *AFSCME Council 96 v. Arrowhead Reg'l Corrections Bd.*, 356 N.W.2d 295, 299 (Minn.1984) (citation omitted).

We conclude that appellants' policy arguments do not have merit. First, courts have never seen lack of motivation as a factor that is relevant to the application of collateral estoppel when a party asserts the claim on an identical issue in both proceedings. And the motivation of a party is an entirely subjective and immeasurable consideration. Finally, if motive is important, it would have to apply equally to cases tried to a jury. But the supreme court already has recognized that collateral estoppel applies to those cases. *Costello*, 472 N.W.2d at 326–27.

Appellants have not demonstrated that a full presentation of damages evidence in the tort action would increase the complexity of recovering both personal injury proceeds and underinsured motorist benefits. Rather, by encouraging duplicative proceedings to determine the amount of damages, appellants' position likely would create an overall increase in litigation on identical issues. Due to the application of collateral estoppel, any enlargement of the tort proceeding significantly simplifies the subsequent underinsured motorist proceeding. Appellants' argument is a mere assertion of where and when the most thorough proceeding should occur.

Finally, we see no merit in appellants' suggestion that the application of estoppel law would subject an insured and an insurer to different results. In *Nordstrom*, the supreme court specifically contemplated that underinsured motorist claims would require a prior proceeding against the tortfeasor.

Concluding that the underinsured motorist carrier could not arbitrate the need for payment of benefits in the aftermath of a tort judgment, the *Nordstrom* court declared that the carrier pays, not because the judgment estops it, "but because it has contractually agreed to pay the judgment less the tort liability insurance recovery." *Nordstrom,* 495 N.W.2d at 858–59. Although we acknowledge that *Nordstrom* dealt with a "judgment," the supreme court has recognized an arbitration as a "final judgment of both law and fact." *Johnson,* 420 N.W.2d at 613. An arbitration produces a legal entitlement to underinsured benefits no different from a judgment following a jury verdict. Because an arbitration award on damages in the underlying tort claim binds both the insured, under the doctrine of collateral estoppel, and the underinsurer, by contract, neither the insured nor the underinsurer may relitigate the amount of the insured's damages in the subsequent proceeding.

Appellants also assert that the application of collateral estoppel denied them their right to a jury trial. *See* Minn. Const. art. I, § 4 ("The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy. A jury trial may be waived by the parties in all cases in the manner prescribed by law."). "If not expressed affirmatively, the intent to waive a jury trial must appear by necessary inference from unequivocal acts or conduct." *Aufderhar,* 452 N.W.2d at 653.

 We conclude that appellants waived their right to a jury trial on the issue of damages. When a party arbitrates a claim that includes an issue on the amount of damages, that party "waives his right to a jury trial on that issue against defendants who were not parties to the arbitration." *Id.* at 654. By submitting to a valid arbitration that determined the amount of appellants' damages, appellants have waived their right to a jury trial. Moreover, a clause in the arbitration agreement expressly waived appellants' right to a jury trial on the damages issue.

■ Appellants assert that another clause in the arbitration agreement, providing that they could reserve their rights to underin-

sured motorist coverage by giving a *Schmidt v. Clothier* notice of the award to their underinsured motorist carrier, effectively demonstrates their intent to seek more than the arbitrator's award in some circumstances. We can discern no legal significance of this clause. There is no evident relationship of the notice mentioned in the agreement to the circumstances of an arbitrator's award; rather, the legal effect of a *Schmidt* notice is confined to circumstances where the parties propose to settle the claim against the tortfeasor. *Schmidt v. Clothier,* 338 N.W.2d 256, 263 (Minn.1983).

### DECISION

■ Because the prior arbitration award collaterally estopped appellants from relitigating the amount of their damages, the trial court properly granted summary judgment for respondent.

**Affirmed.**