Stephanie L. MURRAY, Respondent,

v.

Kathleen PULS, Respondent, Appellant,

Prudential Property and Casualty Insurance Company, intervenor, Appellant, Respondent.

Nos. A04–319, A04–403.

Court of Appeals of Minnesota.

Dec. 20, 2004.

Richard J. Thomas, Chad J. Hintz, Burke & Thomas, P.L.L.P., Saint Paul, MN, for respondent Murray.

Kay Nord Hunt, Reid R. Lindquist, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, MN, for respondent/appellant Puls.

William L. Davidson, Sara J. Lathrop, Brian A. Wood, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for appellant/respondent Prudential Property and Casualty Insurance Company.

Considered and decided by MINGE, Presiding Judge; WILLIS, Judge; and HUSPENI, Judge.*

## OPINION

WILLIS, Judge.

In these consolidated appeals, appellants challenge the district court's confirmation of an arbitration award and argue that (1) the district court lacked jurisdiction to hear the motion to confirm the award; (2) the district court erred by concluding that the arbitration agreement was ambiguous; and (3) the district court erred by finding that the arbitration agreement allowed respondent to pursue a claim for underinsured-motorist (UIM) benefits. Because we conclude that the district court had jurisdiction to hear the motion to confirm the arbitration award and that the district court did not err by concluding that the arbitration agreement was ambiguous and that the agreement allowed respondent to pursue a UIM-benefits claim, we affirm.

## FACTS

Appellants Kathleen Puls and Prudential Insurance Company appeal from an order and judgment confirming an arbitration award in favor of respondent Stephanie Murray for damages caused by an automobile accident involving Puls and Murray in 1995. Murray filed suit against Puls in 2001 and sent a *Malmin*[1] notice to Prudential, her underinsured-motorist insurer, informing it of the suit and of the possibility that she would seek UIM benefits. Prudential did not participate in the lawsuit.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. Art. VI, § 10.

1. *Malmin v. Minn. Mut. Fire & Cas. Co.*, 552 N.W.2d 723 (Minn.1996).

Rather than proceed to trial, the parties agreed to participate in a binding high-low arbitration with a high of $100,000, Puls's liability limit under her automobile-insurance policy, and a low of $20,000. This agreement was not written, but both parties refer to a letter from Puls's attorney, Jill Doescher, confirming the agreement with Murray's attorney, as the arbitration agreement.

Before the arbitration, Doescher left the practice of law, and Timothy Sanda took over Puls's representation. Doescher did not discuss with Puls the possibility that Murray could seek UIM benefits after the arbitration. At the time that Puls and Murray agreed to arbitration, neither party mentioned whether UIM benefits would be sought in the future.

But as they prepared for the arbitration, Murray's attorney made it clear to attorney Sanda that Murray planned to seek UIM benefits. Sanda had asked Murray's attorney whether Murray would be willing to stipulate to her neurosurgeon's written report instead of using his deposition testimony at the arbitration. Murray's attorney replied that they planned to use the deposition testimony to increase Murray's chances of obtaining an arbitration award in excess of Puls's liability limits in order to seek UIM benefits.[2] The parties also agreed not to inform the arbitrator of the high-low agreement so that he would determine the total amount of Murray's damages resulting from the automobile accident.

The arbitrator found that Murray was entitled to an award of $217,746.28, in addition to no-fault benefits already paid.

Murray's attorney then sent a *Schmidt–Clothier*[3] notice of the award to Prudential, inviting it to substitute its draft for Puls's $100,000 in order to preserve its future subrogation rights. Prudential informed Murray's attorney that it would not exercise its rights pursuant to *Schmidt–Clothier*. Puls's insurance carrier wrote Murray a check for $100,000, and Murray endorsed the check and signed a release relieving Puls from further liability connected with the accident.

Murray's attorney then wrote to Prudential and demanded the UIM policy limit of $100,000. Murray claims that Prudential refused to pay Murray any UIM benefits and argued that until the arbitration award was confirmed as a judgment, it had no obligation to pay.

Murray brought a motion to confirm the arbitration award in order to seek UIM benefits from Prudential. Murray and Puls stipulated (1) that the court could confirm the arbitrator's award against Puls in the amount of $100,000; and (2) that the court could confirm the amount of the arbitrator's award of $217,746.28 as Murray's total damages resulting from the accident. Puls now disavows the stipulation. Prudential intervened to oppose Murray's motion to confirm, claiming that Murray and Puls agreed that $100,000 was full satisfaction of Murray's damages.

In an order dated August 27, 2003, the district court determined that the arbitration agreement was ambiguous regarding whether the parties intended the arbitration award only to satisfy Puls's liability to Murray or whether the award was to be a complete satisfaction of Murray's damages.

**2.** Murray was born with tethered-cord syndrome, but she experienced no symptoms related to this condition until after the automobile accident. The neurosurgeon who performed surgery on Murray in August and September 1998 testified that the extreme pain Murray experienced in her back resulted from the accident.

**3.** *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn. 1983).

The court ordered discovery regarding the parties' intentions. After the completion of discovery, Murray renewed her motion to confirm the arbitration award. The district court confirmed the arbitration award, finding that the parties intended to enter a "*Schmidt*-type settlement" and understood that Murray could later pursue UIM benefits. Both Puls and Prudential appeal.

## ISSUES

I. Did the district court have subject-matter jurisdiction to entertain Murray's motion to confirm the arbitration award, or did Puls's satisfaction of the high-low agreement and Murray's release of Puls render the case moot?

II. Did the district court err by concluding that the high-low arbitration agreement was ambiguous?

III. Did the district court err by concluding that the arbitration agreement allowed Murray to pursue a UIM-benefits claim?

## ANALYSIS

### I.

Minnesota courts can decide cases only when there is an actual controversy between the parties. *N. States Power Co. v. City of Sunfish Lake*, 659 N.W.2d 271, 274 (Minn.App.2003). "If . . . an event occurs which makes a decision on the merits unnecessary or an award of effective relief impossible, the appeal will be dismissed as moot." *Id.* (quoting *In re Inspection of Minn. Auto Specialties, Inc.*, 346 N.W.2d 657, 658 (Minn.1984)). Issues of subject-matter jurisdiction are reviewed de novo. *Burkstrand v. Burkstrand*, 632 N.W.2d 206, 209 (Minn.2001).

Appellants argue that the district court lacked jurisdiction to hear the motion to confirm the arbitration award because Puls's insurance carrier had satisfied the settlement agreement and Murray had released Puls from further liability. Appellants claim that consequently there was no reason to confirm the arbitration award as a judgment because the district court's order is moot in the absence of a controversy between Puls and Murray.

The district court's jurisdiction to entertain Murray's motion to confirm rests on whether confirming an arbitration award is necessary in order to pursue UIM benefits after the parties reached a settlement through arbitration and provided the underinsured-motorist insurer with a *Schmidt–Clothier* notice. Before an injured claimant can pursue a UIM-benefits claim, she must first recover from the tortfeasor's liability-insurance policy. *Employers Mut. Cos. v. Nordstrom*, 495 N.W.2d 855, 858 (Minn.1993). She can do this either by (1) pursuing a tort claim to a conclusion in a district court action, or (2) settling the tort claim for "the best settlement." *Id.* at 857. If the judgment or settlement exceeds the liability coverage limits, the injured party can pursue UIM benefits. *Id.* & n. 3. If the injured party pursues the "best settlement" option, she must give a *Schmidt–Clothier* notice to the underinsured-motorist insurer before maintaining a claim for UIM benefits. *Id.*

We conclude that arbitration is an appropriate way to arrive at a "best settlement," but it has been unclear under Minnesota caselaw whether an injured party must first confirm the arbitration award before pursuing UIM benefits. In *Butzer v. Allstate Ins. Co.*,[4] we held that

---

4. Appellants do not cite this case to support their arguments that the confirmation of the

arbitration award was improper. Rather, they seem to rely solely on the fact that Mur-

after arbitration of the underlying tort claim neither the underinsured-motorist insurer nor the insured may relitigate the amount of damages. 567 N.W.2d 534, 538 (Minn.App.1997). We explained that an arbitration award is recognized as a "final judgment of both law and fact" and produces a "legal entitlement to underinsured benefits no different from a judgment following a jury verdict." *Id.* (quoting *Johnson v. Consol. Freightways, Inc.*, 420 N.W.2d 608, 613 (Minn.1988)). But that case does not discuss whether the arbitration award there had been confirmed.

■ Minn.Stat. § 572.18 (2002) provides: "Upon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections 572.19 and 572.20." Minn.Stat. § 572.21 (2002) provides: "Upon the granting of an order confirming, modifying or correcting an award, judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree." The plain language of these statutes indicates that an arbitration award is not the equivalent of a tort judgment. An arbitration award cannot be entered as a judgment unless it is confirmed by the court.[5] Therefore, before a person may recover UIM benefits from his or her underinsured-motorist insurer

based on an arbitration award, the award must be judicially confirmed.

■ Here, Murray informed Prudential of the arbitration award and invited Prudential to substitute its draft and reserve its subrogation rights against Puls. Prudential refused to do so. Murray then accepted payment from Puls's insurer and released Puls from further liability. Murray tried to enforce her UIM policy, and Prudential refused to pay. Because confirmation of the award is required before pursuing UIM benefits, Murray's attempt to confirm the arbitration award was not unnecessary, the case was not moot, and the district court had subject-matter jurisdiction to hear the motion to confirm the arbitration award.

## II.

■ Prudential argues that the district court also erred by concluding that the high-low arbitration agreement was ambiguous. We first address Murray's argument that Prudential's appeal regarding the issue of the ambiguity of the high-low arbitration agreement is not properly before us in this appeal because Prudential failed to appeal from the August 27, 2003 order and did not identify the August order in its notice of appeal here.

■ A notice of appeal must contain a statement specifying and describing the judgment or order from which the appeal is taken. Minn. R. Civ.App. P. 103.01,

---

ray has no reason to confirm the award against Puls because Puls has satisfied her obligation.

5. In unpublished decisions relied on by the district court and by the parties, we have determined that "the arbitrator's award could not bind the parties, absent judicial confirmation of the award." *Mattila v. Am. Family Mut. Ins. Co.*, 1998 WL 170113 at *2, No. C0–97–1982, (Minn.App. Apr.14, 1998); *see also Cooper v. State Farm Auto. Cas. Ins. Co.*, No. C2–97–400 (Minn.App. Sept.9, 1997) (unpub-

lished decision noting that an arbitration award does not conclusively establish damages owed by UIM-benefits carrier unless the arbitration award is confirmed by the court), *review denied* (Minn. Oct. 31, 1997). We interpreted Minn.Stat. §§ 572.18 and 572.21 to require the judicial confirmation of an arbitration award to effectuate the equivalent of a judgment. *Mattila*, 1998 WL 170113 at *2. We determine that the plain language of the statute supports this interpretation.

subd. 1(a). Non-appealable orders may be considered on appeal from the judgment if such orders involve the merits or affect the judgment. *Thuma v. Kroschel,* 506 N.W.2d 14, 19 (Minn.App.1993), *review denied* (Minn. Dec. 14, 1993).

The August order was not an appealable order. An appeal may be taken from an order confirming or denying confirmation of an arbitration award. Minn.Stat. § 572.26, subd. 1(3) (2002). While the August 2003 order denied Murray's motion to confirm at that time, it reserved a final decision on whether to confirm or deny confirmation of the arbitration award until discovery was conducted. The district court specifically confirmed the arbitration award in the January order.

The August order affects the judgment because the finding of ambiguity allowed consideration of extrinsic evidence, and the extrinsic evidence affected the judge's decision to confirm the arbitration award. Because the August order was not an appealable order and it affected the judgment, Prudential may challenge the district court's finding that the arbitration agreement was ambiguous.

We now turn to the merits. Prudential argues that the high-low arbitration agreement unambiguously limits Murray's total damages to $100,000 and does not allow Murray to pursue a UIM-benefits claim against Prudential. If the $100,000 was a complete satisfaction of Murray's claims, Prudential does not need to pay UIM benefits.

Contract principles apply to agreements to arbitrate. *Lucas v. Am. Family Mut. Ins. Co.,* 403 N.W.2d 646, 648 (Minn.1987). Whether a contract is ambiguous is a question of law, on which the reviewing court owes no deference to the district court's determination. *Blackburn, Nickels & Smith, Inc. v. Erickson,* 366 N.W.2d 640, 643–44 (Minn.App.1985), *review denied* (Minn. June 24, 1985). "The interpretation of a contract is a question of law if no ambiguity exists, but if ambiguous, it is a question of fact and extrinsic evidence may be considered." *City of Virginia v. Northland Office Props. Ltd. P'ship,* 465 N.W.2d 424, 427 (Minn.App. 1991), *review denied* (Minn. Apr. 18, 1991).

A contract is ambiguous if its language is reasonably susceptible of more than one meaning. *Blattner v. Forster,* 322 N.W.2d 319, 321 (Minn.1982). The disputed language here is in the letter confirming the high-low arbitration agreement. The letter states: "This will confirm that we have agreed to do a high-low arbitration instead of going to trial in this case. We have agreed on a low of $20,000.00 and a high of $100,000.00."

Prudential argues that this letter shows that the parties intended that the arbitrator's award would be full settlement of the claim. Murray argues that the absence of a specific mention in the agreement of UIM coverage made the document ambiguous because the language could also indicate the parties' intention to obtain a determination of Murray's actual damages.

An arbitrator often conducts a high-low arbitration without knowing the agreed-upon high or low and decides damages as in an ordinary arbitration. *See* John W. Cooley & Steven Lubet, *Arbitration Advocacy* 250 (2d ed.2003). Because the confirmation letter does not clarify whether the high was a complete settlement or a limit on Puls's liability, and because high-low arbitration agreements concern maximum payment, not maximum damages, the letter could reasonably be susceptible of more than one interpretation. Therefore, the district court did not err by concluding that the arbitration agreement was ambiguous.

## III.

 Prudential and Puls both argue that the district court erred by concluding that the parties intended to enter into a "*Schmidt*-type settlement" and by concluding that the high-low arbitration agreement allowed Murray to pursue a UIM-benefits claim. This is a question of fact, and this court will not disturb a district court's findings of fact unless the findings are clearly erroneous. *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999).

The district court based its finding that the parties intended to enter into a *Schmidt*-type settlement on the following facts: (1) Murray believed Puls to be underinsured and planned to seek UIM benefits from the beginning of the litigation; (2) both parties believed that Murray's damages would probably exceed Puls's $100,000 liability-policy limit; (3) there was no discussion or agreement *not* to seek UIM benefits; (4) "Doescher did not advise [Puls] that Prudential would have subrogation rights against her in the event it substituted its draft because she did not consider [Murray's] right to UIM benefits; not because she understood the agreement prohibited [Murray's] right to UIM benefits"; and (5) at the time of the arbitration, attorney Sanda understood that Murray planned to seek UIM benefits and "signed an agreement to confirm the arbitration award in the full amount of the damages."

"A written agreement to submit any existing controversy to arbitration ... is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." Minn. Stat. § 572.08 (2002). Prudential argues (1) that there is no evidence that Puls and Murray agreed and understood that a UIM claim would be pursued; and (2) that because there was never a meeting of the minds, the district court's reliance on post-agreement conduct was improper.

 A meeting of the minds is a necessary element of a contract in Minnesota. *Minneapolis Cablesystems v. City of Minneapolis*, 299 N.W.2d 121, 122 (Minn.1980). Because agreements to arbitrate are governed by contract principles, Murray and Puls's agreement to arbitrate is unenforceable if there was no meeting of the minds concerning the agreement's essential elements. *Id.* The parties agree that the existence or nonexistence of an agreement for a UIM claim to proceed was an essential element of the arbitration agreement.

 It is clear that both Puls and Murray agreed to arbitrate, but what is unclear in the agreement is *what* the parties intended to arbitrate—Murray's total damages or merely the damages to be paid by Puls. Prudential argues that "[t]he question of the parties' intent is measured by the meeting of the minds at the time the agreement was made, not upon any subsequent discussions." But this court has noted that a "simultaneous meeting of the minds" is not required. *Peters v. Mut. Benefit Life Ins. Co.*, 420 N.W.2d 908, 914 (Minn.App.1988).

> The requisite mutual assent for the formation of a contract ... does not require a subjective mutual intent to agree on the same thing in the same sense, but may be based on objective manifestations whereby one party by his words or by his conduct, or by both, leads the other party reasonably to assume that he assents to and accepts the terms of the other's offer.

*W. Insulation Servs., Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 460 N.W.2d 355, 358 (Minn.App.1990) (quotation omitted). The record shows that before the arbitration took place, Puls's attorney knew of Murray's intent to seek UIM benefits and to have the arbitrator determine Murray's

total damages, even if they exceeded the $100,000 limit of the high-low agreement. If Puls intended for the arbitration agreement to limit Murray's total damages to $100,000, she had the opportunity to reject the proposed arbitration. Puls's failure to object to Murray's intent to seek UIM benefits and Puls's continued participation in the arbitration process manifests the requisite mutual assent that the parties intended to enter into a *Schmidt*-type settlement and understood that Murray could later pursue UIM benefits.[6] The district court's finding was not clearly erroneous.

Because there is sufficient evidence in the record other than Puls and Murray's stipulation to support the district court's confirmation of the arbitration agreement, Puls's purported disavowal of the stipulation because her attorney entered into it without her knowledge or agreement is of no consequence.

## DECISION

Because judicial confirmation of an arbitration award is necessary in order to pursue a UIM-benefits claim after reaching a "best settlement" through arbitration and providing the underinsured-motorist insurer with a *Schmidt–Clothier* notice, the district court had jurisdiction to entertain Murray's motion to confirm the arbitration award. Because the arbitration agreement was susceptible of more than one interpretation, the district court did not err by concluding that the agreement was ambiguous. Because the conduct of the parties prior to the arbitration showed an

understanding that Murray would pursue a UIM-benefits claim, the district court did not err by concluding that the arbitration agreement allowed her to do so.

**Affirmed.**

---

6. Puls argues that the agreement that Murray could pursue UIM coverage was not supported by consideration. But performance of a contract satisfies the element of consideration. *Welsh v. Barnes–Duluth Shipbuilding Co.*, 221 Minn. 37, 44–45, 21 N.W.2d 43, 47 (1945) (also noting that "[i]n cases of executed contracts, mutuality, lacking while the contract was executory, or, as it is said, at its inception, is supplied by the promisee's subsequent performance"). Here, the agreement between Murray and Puls was to participate in arbitration to determine the amount of damages owed to Murray. Both Murray and Puls, through their attorneys, participated in the arbitration, thus satisfying the requirement of consideration.