# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-0132
# A14-0224

State Farm Mutual Automobile Insurance Company,
Respondent (A14-0132),
Appellant (A14-0224),

vs.

Angela Mary Lennartson,
Appellant (A14-0132),

Katie Foss,
Respondent (A14-0224)

**Filed December 1, 2014**
**Reversed (A14-0132)**
**Affirmed (A14-0224)**
**Chutich, Judge**

Washington County District Court
File No. 82-CV-13-4106

Ramsey County District Court
File No. 62-CV-13-3925

Suzanne Wolbeck Kvas, Lutter, Gilbert & Kvas, LLC, Eagan, Minnesota (for respondent/appellant State Farm)

D. Patrick McCullough, Courtney Pedersen-Louis, McCullough & Associates, P.A., St. Paul, Minnesota (for appellant Angela Lennartson)

D. Patrick McCullough, Courtney Pedersen-Louis, McCullough & Associates, P.A., St. Paul, Minnesota (for respondent Katie Foss)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Stoneburner, Judge.[*]

## SYLLABUS

The plain language of the Minnesota No-Fault Insurance Act and the doctrine of collateral estoppel do not prevent an insured from seeking economic-loss benefits in a no-fault arbitration proceeding after the insured has litigated economic-loss damages in a negligence action.

## OPINION

**CHUTICH**, Judge

In these consolidated appeals, appellant Angela Lennartson and respondent Katie Foss (insureds) were involved in separate car accidents, recovered awards in negligence actions, and then received awards in arbitration proceedings under the Minnesota No-Fault Insurance Act (no-fault act) from State Farm Mutual Automobile Insurance Company, their insurer. State Farm, respondent in the Lennartson appeal and appellant in the Foss appeal, challenges the arbitration awards. It contends that the no-fault act's purpose and collateral estoppel prevent the insureds from seeking economic-loss awards in no-fault arbitration when the same damages were litigated in a prior negligence action. Because neither the plain language of the no-fault act nor collateral estoppel prevent an insured from seeking economic-loss benefits in no-fault arbitration after litigating the

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

same damages in a negligence action, we reverse the vacation of Lennartson's arbitration award and affirm Foss's arbitration award.

## FACTS

In November 2009, Katie Foss was injured in a car accident. Foss sought medical treatment for her injuries and submitted a claim for no-fault benefits to her insurer, State Farm. Foss's insurance policy had a no-fault medical coverage limit of $50,000 and a wage loss limit of $20,000. State Farm discontinued Foss's no-fault benefits in June 2012, after an independent medical examination. At the time her no-fault benefits were terminated, State Farm had reimbursed $39,667.92 of Foss's past medical expenses.

Foss next sued the driver of the other car in a negligence action, claiming $46,641.29 in past medical expenses and $7,574.42 in past wage loss. In January 2013, a jury awarded Foss $19,760.40 for past medical expenses and $1,662.00 in past mileage expenses. Foss received nothing for past wage loss. Minnesota Statutes section 65B.51, subdivision 1 (2012) required the district court to deduct the $39,667.92 in no-fault medical benefits that State Farm had already paid Foss from her total jury award. Because State Farm had paid Foss more no-fault benefits than the jury awarded, she recovered no additional reimbursement for past medical expenses. Shortly after her trial, Foss petitioned for no-fault arbitration, seeking wage loss and medical expense benefits for losses that were not reimbursed in her negligence action.

In June 2013, the arbitrator awarded Foss $8,284.41 for medical expenses and $3,783.44 for wage loss. The arbitrator found Foss's testimony to be very credible, and

3

he specifically criticized the independent medical examiner's opinion that led State Farm to terminate her no-fault benefits.

State Farm moved to vacate the arbitration award, claiming that collateral estoppel barred the arbitration and that the arbitrator exceeded his powers when he granted the arbitration award with full knowledge that Foss had previously recovered past medical expenses in her negligence case. The district court denied State Farm's motion. It found that the arbitrator did not exceed his powers because the arbitrator explicitly reserved the issue of collateral estoppel for the district court, and the district court held that collateral estoppel does not apply.

In the second appeal, Angela Lennartson was injured in a car accident in August 2008. Lennartson sought medical treatment for her injuries and submitted a claim for no-fault benefits to her insurer, State Farm. At the time of the accident, Lennartson was covered by her parent's State Farm insurance policy; the policy had stackable no-fault benefits for two vehicles, with a no-fault medical coverage limit of $40,000. In January 2010, State Farm discontinued Lennartson's no-fault benefits based on the results of an independent medical examination. When State Farm terminated Lennartson's no-fault benefits, it had reimbursed her $11,671.16 for medical expenses.

Lennartson sued the driver of the other vehicle in a negligence action. In November 2012, a jury awarded Lennartson, among other relief, $23,910.11 for past medical expenses. As required by Minnesota Statutes section 65B.51, subdivision 1, the district court deducted the no-fault benefits that State Farm had already paid Lennartson.

4

Lennartson then petitioned for no-fault arbitration, seeking reimbursement for the same past medical expenses that the jury had awarded in her previous negligence action.

In October 2013, the arbitrator awarded Lennartson $11,790.31 in past medical expenses and interest. State Farm moved to vacate the arbitration award, claiming that the award gave Lennartson a double recovery that contradicts the public policy behind the no-fault act and that collateral estoppel bars Lennartson from arbitrating to obtain the same medical expenses that she had already litigated and recovered in her negligence action.

The district court agreed and vacated the arbitration award. It found that the arbitrator exceeded his authority because the public policy behind the no-fault act prevents Lennartson from seeking recovery in arbitration for the same medical expenses that she had been awarded in her negligence action. In support of this conclusion, the district court relied on one of the purposes of the no-fault act—the prevention of double recovery—as the policy that conclusively barred Lennartson's arbitration award. The district court also found that Lennartson had no "economic loss" within the meaning of Minnesota Statutes section 65B.43, subdivision 7 (2012), permitting her to recover under the no-fault act. And finally, the district court concluded that collateral estoppel bars Lennartson from arbitrating the same past medical expenses that she had already litigated in her negligence action.

These consolidated appeals followed.

**ISSUE**

Does the Minnesota No-Fault Insurance Act or collateral estoppel prevent an insured from seeking economic-loss benefits in a no-fault arbitration proceeding if the insured has already litigated economic-loss damages in a negligence action?

**ANALYSIS**

This court reviews statutory interpretation questions of the no-fault act de novo. *Pepper v. State Farm Mut. Auto. Ins. Co.*, 813 N.W.2d 921, 925 (Minn. 2012). "The goal of all statutory interpretation is to ascertain and effectuate the intent of the Legislature." *Hous. & Redevelopment Auth. of Duluth v. Lee*, 852 N.W.2d 683, 687 (Minn. 2014).

State Farm argues that the insureds cannot arbitrate their no-fault claims because they fully litigated their claims for economic-loss benefits in separate negligence actions and the arbitration awards would be a double recovery contrary to the no-fault act's purposes. The insureds contend that the arbitration awards compensate them for a "loss" consistent with the no-fault act's stated purposes and that nothing in the no-fault act prohibits them from recovering an arbitration award *after* a jury trial. Because we conclude that the plain language of the no-fault act does not prohibit an insured from seeking economic-loss benefits in no-fault arbitration after litigating the same damages in a negligence action, we reverse the district court's vacation of Lennartson's arbitration award and affirm Foss's arbitration award.

***The No-Fault Act***

The no-fault act requires every "owner of a motor vehicle of a type which is required to be registered or licensed or is principally garaged in [Minnesota]" to carry no-

6

fault insurance. Minn. Stat. § 65B.48, subd. 1 (2012). An insured person who suffers an injury arising out of the maintenance or use of a motor vehicle is entitled to basic economic-loss benefits, also known as no-fault benefits. Minn. Stat. § 65B.44, subd. 1(a) (2012). Economic-loss benefits reimburse an insured for medical expenses and income loss, among other things. *Id.* "Medical expense benefits reimburse a wide range of reasonable and necessary medical expenses, including medical, chiropractic, and rehabilitative services." *Do v. Am. Family Mut. Ins. Co.*, 779 N.W.2d 853, 857 (Minn. 2010) (citing Minn. Stat. § 65B.44, subd. 2 (2008)).

An insured recovers basic economic-loss benefits without regard to fault. Minn. Stat. § 65B.42(1) (2012); *see also Milbrandt v. Am. Legion Post of Mora*, 372 N.W.2d 702, 705 (Minn. 1985) ("[The insurer] has a duty to pay basic economic loss benefits to its insured without regard to fault."). The no-fault act requires an insured to carry a minimum of $20,000 for medical expense coverage and $20,000 for coverage of other economic losses that includes income loss. Minn. Stat. § 65B.44, subd. 1(a). But policy holders can contract for coverage above the statutory minimum, and here, Lennartson and Foss did so.

The no-fault act was passed with several purposes. *See* Minn. Stat. § 65B.42. One of the purposes is "to relieve the severe economic distress of uncompensated victims of automobile accidents." *Id.* (1). The act accomplishes this purpose by making basic economic-loss benefits "primary with respect to benefits." Minn. Stat. § 65B.61, subd. 1 (2012). Another purpose of the no-fault act is "to provide offsets to avoid duplicate

7

recovery." Minn. Stat. § 65B.42(5). We take note of these purposes when we construe the act. *Nelson v. Am. Family Ins. Grp.*, 651 N.W.2d 499, 503 (Minn. 2002).

### Plain Language

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2012). And when a statute is unambiguous, we apply its plain meaning. *White v. City of Elk River*, 840 N.W.2d 43, 53 (Minn. 2013). "We construe statutes to effect their essential purpose but will not disregard a statute's clear language to pursue the spirit of the law." *Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 123 (Minn. 2007).

State Farm argues that the statutory offset provision of the no-fault act[1] bars the insureds from seeking post-trial arbitration and any interpretation otherwise would nullify the provision. The statutory offset provision instructs the district court to deduct from a tort verdict (1) any no-fault benefits that the insurer previously paid and (2) any no-fault arbitration awards recovered before trial. *See* Minn. Stat. § 65B.51, subd. 1. In other words, a district court deducts no-fault payments and arbitration awards only when the

---

[1] The statutory offset provision states in full:

> With respect to a cause of action in negligence accruing as a result of injury arising out of the operation, ownership, maintenance or use of a motor vehicle with respect to which security has been provided as required by sections 65B.41 to 65B.71, the court shall deduct from any recovery the value of basic or optional economic loss benefits paid or payable, or which would be payable but for any applicable deductible. In any case where the claimant is found to be at fault under section 604.01, the deduction for basic economic loss benefits must be made before the claimant's damages are reduced under section 604.01, subdivision 1.

Minn. Stat. § 65B.51, subd. 1.

insured receives no-fault benefits *before* the insured recovers in the negligence action. *See id*.

Contrary to State Farm's assertion, nothing in the plain language of the statutory offset provision requires the district court to reduce an arbitration award by amounts the insured previously recovered in a tort action. The statutory offset provision of section 65B.51, subdivision 1, unambiguously applies only to no-fault arbitration awards received before trial in the negligence action. And when the statute is unambiguous, as it is here, we apply its plain meaning. *White*, 840 N.W.2d at 53. To interpret the plain language of this provision otherwise is to disregard the letter of the law, and we decline to do so here.

State Farm nevertheless asks this court to look beyond the plain language of the no-fault act to find an implicit legislative intent to bar the insureds alleged duplicate recoveries based on the no-fault act's stated purpose "to provide offsets to avoid duplicate recovery." Minn. Stat. § 65B.42(5). While this court has "the power to inquire beyond a statute's plain language," the power is exercised sparingly and only when "the statute's plain language violates a *clearly* expressed goal of the legislature." *Erickson v. State*, 599 N.W.2d 589, 591 (Minn. App. 1999) (quotation omitted), *review denied* (Minn. Dec. 14, 1999).

The legislature has clearly expressed a goal "*to provide* offsets to avoid duplicate recovery," *see* Minnesota Statutes section 65B.42(5) (emphasis added), and the statutory offset provision of the no-fault act fulfills this goal, *see* Minnesota Statutes section 65B.51, subd. 1. If the legislature intends to apply this provision to an arbitration

9

award issued after an insured's recovery in a negligence action, then the legislature must amend the no-fault act accordingly.

Furthermore, the policy of avoiding duplicate recoveries does not apply to Foss. In her negligence action, Foss did not recover all of her claimed past medical expenses, and she recovered nothing for past wage loss. And when Foss arbitrated her no-fault claim, she only sought reimbursement for the economic-loss benefits that she did not recover in her negligence action. She did not seek a double recovery. Thus, Foss's arbitration award does not violate the no-fault act's purposes; rather, her recovery fulfills the act's purpose of relieving the "severe economic distress of uncompensated victims." Minn. Stat. § 65B.42(1).

Lennartson's situation is different because she sought to recover the same economic-loss benefits in no-fault arbitration that she received in her tort action. But allowing Lennartson to seek economic-loss benefits in arbitration does not violate a clear legislative purpose under the no-fault act because the act does not generally prohibit *all* duplicate recoveries. *See Stout v. AMCO Ins. Co.*, 645 N.W.2d 108, 113 (Minn. 2002) (finding that an insured's "loss" under the no-fault act accrues when medical expenses are incurred and discounts later negotiated with medical providers do not change the amount incurred); *Wallace v. Tri-State Ins. Co.*, 302 N.W.2d 337, 339-40 (Minn. 1980) (finding that a no-fault insurer must pay basic economic-loss benefits even if those benefits duplicate payments from the insured's health insurer). Simply because a duplicate recovery *may* occur does not mean that Lennartson's recovery contradicts the spirit of the no-fault act.

In *Do*, the supreme court recently analyzed a similar "double recovery" situation under the no-fault statutory offset provision of section 65B.51, subdivision 1, and the collateral source statute.[2]  779 N.W.2d at 860.  The insured, Do, was injured in a car accident and incurred $40,853.13 in medical expenses.  *Id.* at 855.  Do's policy provided for $30,000 in no-fault medical expense benefits, but the insurer, American Family, only paid $865.50 in no-fault benefits claiming that Do's medical expenses were "not reasonable, necessary, or related to the accident."  *Id.*  Do first sued the driver of the other car and reached a settlement with the driver's insurer for $28,000; the settlement payment was not allocated to any damages in particular.  *Id.*

Do then sued American Family seeking no-fault benefits and recovered $49,416.13, $39,416.13 of which were allocated to his past medical expenses.  *Id.*  The district court found that the settlement payment Do recovered in the negligence action was a collateral source under Minnesota Statutes section 548.251 and deducted that amount[3] from Do's verdict, leaving Do with a total recovery of $20,550.63.  *Id.*

The supreme court granted review to decide "whether [Minnesota's collateral source statute] requires the deduction of a settlement payment made by the tortfeasor's automobile insurer from the plaintiff's subsequent judgment against his own automobile

---

[2] The collateral source offset statute is separate from the no-fault act, but operates in a manner similar to the statutory offset provision of the no-fault act in that its purpose is to prevent duplicate recoveries.  *See* Minn. Stat. § 548.251 (2012).  The collateral source offset statute sets out a procedure in which a party in a civil action can request the court to determine and deduct collateral sources from the liability verdict.  *Id.*, subd. 2.

[3] The district court also deducted the $865.50 in no-fault benefits that American Family had paid Do before terminating his benefits.  *Id.*

11

insurer for no-fault benefits." *Id.* at 856. To answer this question, the supreme court carefully examined the no-fault act and the collateral source statute. *Id.* at 856-58.

In its discussion of the no-fault act, the supreme court stated that "[a] claim for no-fault benefits is separate and distinct from a tort claim against the tortfeasor and the tortfeasor's insurer." *Id.* at 857 (citing Minn. Stat. § 65B.49, subds. 2, 3 (2008)). The supreme court also found that no-fault insurers have "'a *duty* to provide basic economic loss benefits to reimburse an injured person's loss even when the injured person is entitled to compensation for the same loss from a different source.'" *Id.* at 857 (emphasis added) (quoting *Stout*, 645 N.W.2d at 114). The *Do* court specifically considered the no-fault offset provision of section 65B.51, subdivision 1, and concluded that it did not apply because Do had settled the tort claim with the tortfeasor's insurer. *Id.* Notably, the supreme court did not consider applying the spirit of the no-fault offset provision to reduce Do's later no-fault judgment. *See id.* at 857, 860.

*Do* also interpreted the collateral source statute. *Id.* at 858. The collateral source statute, like the no-fault statute, is concerned with preventing double recoveries. *Id.* And in *Do,* the supreme court recognized the same "double recovery" argument that State Farm makes here: "We recognize that based upon our interpretation of the [collateral source] statute, it is possible that a plaintiff who chooses to pursue his claim serially first against the tortfeasor and then against his own no-fault insurer may receive a windfall." *Id.* at 860. Despite the collateral source statute's policy against double recoveries, the supreme court declined to expand the definition of "collateral source" in the absence of clear statutory language. *Id.* at 859. It reasoned that "[u]ltimately, the question of a

potential windfall to the plaintiff in this circumstance is one for the legislature and not this court." *Id.* at 860.

*Do* guides our analysis here because the supreme court in *Do* acknowledged the statute's policy of avoiding double recoveries and still declined to expand the definition of "collateral source" in the absence of clear statutory language. *Id.* at 859. *Do*'s reasoning applies with even greater force here because *no* statutory language bars the insureds from seeking economic-loss benefits in a no-fault arbitration proceeding after litigating and recovering the same economic-loss damages in a negligence action. Thus, consistent with *Do*, we conclude that the insureds can arbitrate their no-fault claims after litigating the same claims, even if insureds like Lennartson receive a windfall. *See, e.g.*, *Stout*, 645 N.W.2d at 114 ("Under our case law, if there is to be a windfall either to an insurer or to an insured, the windfall should go to the insured.").

State Farm also contends that Lennartson cannot arbitrate post-trial because the no-fault act only allows an insured who suffers an economic detriment to recover, and here, Lennartson's liability action award left her with no outstanding economic detriment.

The no-fault act provides basic economic-loss benefits for "all loss suffered through injury arising out of the maintenance or use of a motor vehicle." Minn. Stat. § 65B.44, subd. 1(a). "'Loss' means economic detriment resulting from the accident causing the injury . . . ." Minn. Stat. § 65B.43, subd. 7. In *Stout*, the supreme court interpreted "loss" under the no-fault act. 645 N.W.2d at 112-13. The injured plaintiff in *Stout* was initially billed $25,638.73 for his medical treatments, but the bill was discounted to $12,471.44 based on the plaintiff's Medicaid and MinnesotaCare fee

13

schedules. *Id.* at 109. The no-fault insurer wanted to reimburse the plaintiff for the discounted amount instead of the actual amount that the healthcare providers first billed. *Id.* at 112.

The supreme court held that "loss" refers to the medical expenses that the plaintiff incurred in his initial medical bill and not the later discounted amount. *Id.* at 113. The supreme court reasoned that the plaintiff's discounts did not decrease his "loss" because "no language in the Act provid[es] that loss, once accrued, can be reduced through the involvement of the injured person's health insurer." *Id.* Additionally, the court reasoned that reducing the plaintiff's loss on the basis of discounts "would be inconsistent with the Act's designation of basic economic loss benefits as primary and would violate the Act's prohibition of the coordination of benefits." *Id.*

While we recognize that Lennartson's tort recovery fully compensated her outstanding economic losses, under *Stout*, Lennartson incurred a "loss" at the moment she incurred medical expenses. *See id.* And similar to the supreme court's reasoning in *Stout*, nothing in the plain language of the no-fault act prohibits Lennartson's recovery. Moreover, preventing Lennartson from arbitrating her no-fault claim would be inconsistent with the act's designation of no-fault benefits as "primary." *See id.* (citing Minn. Stat. § 65B.61, subd. 1 (2000)) ("[R]educing Stout's loss on the basis of discounts obtained by his health insurer would be inconsistent with the Act's designation of basic economic loss benefits as primary . . . .").

In sum, the plain language of the no-fault act does not preclude insureds from seeking recovery of benefits in an arbitration proceeding following a negligence action

and allowing them to do so does not violate a "clearly expressed goal of the legislature." *Erickson*, 599 N.W.2d at 591 (emphasis omitted). If the legislature intends to prohibit insureds such as Foss and Lennartson from recovering under these circumstances, then the legislature must amend the no-fault act accordingly.

### *Collateral Estoppel*

State Farm also contends that general collateral estoppel principles bar the insureds who brought a tort action from later seeking economic-loss benefits in a no-fault proceeding because the insureds are re-litigating the same issues. Foss claims that the issues presented at trial and in arbitration are distinct because she sought different damages in each proceeding; at trial she sought the *full* amount of medical expenses and gross wage loss whereas in arbitration she sought only her *unpaid* medical expenses and wage loss benefits. Lennartson acknowledges that she sought a double recovery in arbitration, but argues that collateral estoppel requires the legal issue to be identical and not merely the recovery sought.

"Collateral estoppel precludes the relitigation of issues which are both identical to those issues already litigated by the parties in a prior action and necessary and essential to the resulting judgment." *Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn. 1982). Collateral estoppel applies when,

> (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

15

*Id.* But collateral estoppel is also an equitable remedy that we need not rigidly apply; instead, we must consider whether its application "would work an injustice on the party against whom the [doctrine is] urged." *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004). Here, the only element that the parties dispute is whether the issues litigated at trial were identical to the issues in arbitration.

The Lennartson district court applied collateral estoppel to vacate the arbitration award reasoning that "[t]he issue of past medical expenses litigated in the civil case is the identical issue submitted in the no-fault arbitration." The Foss district court concluded that collateral estoppel did not apply because the arbitration claim was "statutory and contractual" while the trial claim was "negligence in tort." This court concludes that the issue in a no-fault arbitration is not identical to the issue in a negligence action because no-fault arbitration is a completely different system of recovery from a liability trial.

No Minnesota case has definitively answered whether collateral estoppel prevents an insured from arbitrating their no-fault claims after seeking to recover for the same losses in a tort action, but several cases warrant discussion here.

In *Nelson*, the insured, Nelson, was injured in a car accident in South Dakota. 651 N.W.2d at 502. Nelson's insurer, American Family, refused to pay her no-fault benefits. *Id.* Nelson sued the tortfeasor in South Dakota and recovered damages, specifically $37,000 for past income loss. *Id.* Because Nelson's past income-loss award was subject to a one-third contingency fee arrangement with her attorney, she only recovered a net amount of $24,666.67 in past-income loss damages. *Id.* Nelson then sued American Family in Minnesota to recover the portion of her trial award that was allocated to her

16

attorney's fees. *Id.* The supreme court, using the no-fault subrogation provision applicable to out-of-state accidents, ultimately awarded Nelson a proportionate share of the attorney fees charged in the South Dakota tort action. *Id.* at 505-07.

American Family asserted a defense of collateral estoppel, arguing that "the issues resolved in the South Dakota action [were] identical to the issues raised in [Nelson's appeal] because the issue of income loss was identical." *Id.* at 511. The supreme court disagreed. *Id.* It found that collateral estoppel did not bar Nelson's claim because the actual legal issues presented in the two cases were not identical—the trial in South Dakota concerned negligence, and trial in Minnesota concerned the insurer's obligation to pay no-fault subrogation benefits. *Id.*

*Nelson* illustrates an important principle: the issues in a trial against a tortfeasor for negligence are not the same issues as those in a claim for no-fault benefits. *See id.* Because a prior liability action against the tortfeasor in *Nelson* did not collaterally estop the insured's breach of contract claim for no-fault benefits, it follows that an insured's prior negligence action does not collaterally estop a subsequent no-fault arbitration.

State Farm argues that *Nelson* is distinguishable because *Nelson* concerns the no-fault subrogation statute. *See id.* at 504, 507. But State Farm's attempt to distinguish *Nelson* is impermissibly limiting; the *Nelson* court used broad language to prohibit the application of collateral estoppel to the later no-fault action. *Id.* at 511. Furthermore, *National Indemnity v. Farm Bureau Mutual Insurance Company*, 348 N.W.2d 748, 750 (Minn. 1984), *superseded by statute on other grounds*, sets forth this same line of reasoning in the arbitration context.

17

In *National Indemnity*, an insurer, Farm Bureau, paid no-fault benefits to its insured after a car accident. *Id.* at 749. The insured then sued the tortfeasor and received a directed verdict as to negligence, but the jury awarded no damages. *Id.* After the verdict, Farm Bureau initiated an arbitration proceeding against the tortfeasor's insurer, National, for indemnification under the no-fault act. *Id.* at 749-50. The arbitrator ordered National to reimburse Farm Bureau for the no-fault benefits that Farm Bureau had paid its insured. *Id.* at 750.

National sought to vacate the arbitrator's award claiming that the arbitrator had no authority to force National to indemnify Farm Bureau because Farm Bureau's insured did not recover damages at trial. *Id.* National argued that the jury verdict "absolutely precluded the arbitrators from compelling National to indemnify Farm Bureau." *Id.* But the supreme court disagreed and said that the "major flaw[] in National's argument [is] in equating arbitration with court actions." *Id.* The supreme court upheld Farm Bureau's indemnity award, finding that "no-fault arbitration was intended as a recourse totally separate from resort to the courts" and that "arbitrators may give whatever weight to the prior trial proceedings that they deem justified." *Id.* at 750-51. As *National Indemnity* illustrates, no-fault arbitration is a separate and distinct recovery system from the courts.

State Farm argues that *National Indemnity* does not apply to these consolidated appeals because it examined the indemnity provisions of the no-fault act. But the rationale of *National Indemnity* is broader than State Farm contends, and it reinforces the principle from *Nelson* that no-fault arbitration claims are separate and distinct from previous liability actions against a tortfeasor. This principle was also reiterated in *Do*

18

when the supreme court held that an insured's prior settlement with a tortfeasor's insurer is a "separate and distinct" claim from the insured's claim for no-fault benefits. 779 N.W.2d at 857. Because caselaw interpreting the no-fault act has consistently refused to apply collateral estoppel between liability actions and claims for no-fault benefits, we follow these precedents here. *See Nelson*, 651 N.W.2d at 511; *National Indemnity*, 348 N.W.2d at 750; *see also Milwaukee Mut. Ins. Co. v. Currier*, 310 Minn. 81, 88, 245 N.W.2d 248, 251 (1976) ("[A] res judicata defense does not preclude arbitration proceedings solely because the underlying claim would be barred by res judicata if asserted in an action in court.").

In addition to caselaw, the structure and procedural rules of the no-fault arbitration system further support our conclusion that collateral estoppel does not apply here. One of the greatest practical differences between a no-fault arbitration and a trial is the type of evidence that a factfinder may consider; no-fault arbitrators can consider a wide range of evidence not normally admissible at trial. Minn. R. No-Fault Arb. 24.[4]

---

[4] Rule 24 of the Minnesota Rules of No-Fault Arbitration says:

> The parties may offer such evidence as they desire and shall produce such additional evidence as the arbitrator may deem necessary to an understanding and determination of the issues. The arbitrator shall be the judge of the relevancy and materiality of any evidence offered, and conformity to legal rules of evidence shall not be necessary. The parties shall be encouraged to offer, and the arbitrator shall be encouraged to receive and consider, evidence by affidavit or other document, including medical reports, statements of witnesses, officers, accident reports, medical texts and other similar written documents that would not ordinarily be admissible as evidence in the courts of this state. In receiving this evidence,

19

Moreover, a jury in a negligence action and an arbitrator in a no-fault arbitration focus on different issues. In a negligence action, a jury must determine who is at fault, apportion liability, and calculate the appropriate amount of damages sustained. In a no-fault arbitration, the arbitrator focuses exclusively on whether the insured incurred economic-loss that is causally related to the accident. *See* Minn. Stat. § 65B.44 (2012) (stating that medical expense benefits reimburse expenses reasonable and necessary for treatment related to a motor vehicle accident). These structural and procedural differences reinforce *National Indemnity*'s determination that "no-fault arbitration was intended as a recourse totally separate from resort to the courts." 348 N.W.2d at 750.

State Farm cites a number of cases in which courts have applied collateral estoppel principles in the context of tort actions and actions for underinsured or uninsured motorist benefits. *Costello v. Aetna Cas. & Sur. Co.*, 472 N.W.2d 324 (Minn. 1991) (holding that collateral estoppel may bind a party on an issue determined in prior litigation if the court makes a determination in a dispute over coverage); *Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648 (Minn. 1990) (holding that an insured was collaterally estopped from re-litigating damages in a civil action against a tortfeasor because the insured had already arbitrated his uninsured motorist benefits claim against his insurer); *Butzer v. Allstate Ins. Co.*, 567 N.W.2d 534 (Minn. App. 1997) (holding that insureds were collaterally estopped from litigating damages in a jury trial after first arbitrating their underinsured motorist claim).

---

the arbitrator shall consider any objections to its admission in determining the weight to which he or she deems it is entitled.

20

On the surface, the underinsured and uninsured motorist cases that State Farm cites appear to support its argument that collateral estoppel bars the insureds' arbitration proceedings here. These cases, however, are all legally and factually distinguishable.[5] For example, in *Aufderhar*, the claimant's right to arbitrate arose from a contract created between the claimant and his uninsured motorist insurer.[6] 452 N.W.2d at 653. In *Aufderhar*, the supreme court distinguished *National Indemnity* by explaining that collateral estoppel only bars a subsequent arbitration when no statutory right to arbitrate exists. *Id.* But here, the insureds have a statutory right to arbitrate. *See* Minn. Stat. § 65B.525, subd. 1 (mandating binding arbitration for all no-fault disputes under $10,000). Thus, the underinsured and uninsured cases that State Farm cites are not persuasive because the no-fault act creates a statutory right for insureds to arbitrate economic-loss claims with their no-fault insurer.

Moreover, the uninsured and underinsured motorist cases that State Farm cites involve legal issues that are raised in tort liability cases: negligence, causation, and damages, including medical expenses and pain and suffering. No-fault economic

---

[5] Before the *Costello* court even reached the issue of collateral estoppel, it determined that it "must make a finding of coverage" before Costello could invoke his right to arbitration. 472 N.W.2d at 326. Here, no finding of coverage is required; the insureds have a statutory right to arbitrate. *See* Minn. Stat. § 65B.525, subd. 1 (2012). Also, in *Butzer*, the appellant and the tortfeasor's insurer voluntarily entered into binding arbitration and the arbitration clause in the agreement expressly waived the appellant's right to a jury trial regarding damages. 567 N.W.2d at 536, 538.

[6] The supreme court limited its holding in *Aufderhar* to the "factual posture presented by this case." *Id.* at 649. The factual posture included Aufderhar initiating binding arbitration, securing a district court order to compel the binding arbitration, and receiving an arbitration proceeding with a three-lawyer panel that used "legal rules of procedure and evidence." *Id.* at 651-52.

benefits, by contrast, are limited. *See* Minn. Stat. § 65B.51, subd. 3 (limiting recovery of damages for noneconomic detriment).

State Farm finally contends that allowing insureds to arbitrate their no-fault claims after litigating their economic-loss benefits encourages insureds to delay arbitration until resolution of the tort claim in hope of receiving a double recovery. But as the *Do* court recognized, "the plaintiff also takes a risk in pursuing his claims piecemeal that he will receive less than full compensation." *Do*, 779 N.W.2d at 860.

Moreover, because no-fault arbitration is an efficient and inexpensive tool to resolve an insured's economic-loss claim, the insured may be unlikely to delay no-fault arbitration for the mere possibility of a double recovery. Further, nothing prevents an arbitrator from considering the jury's findings. *See Milwaukee*, 310 Minn. at 88, 245 N.W.2d at 252 ("[The arbitrator] may give whatever weight to the prior trial proceedings as he determines justified under all the circumstances."). And most importantly here, as in *Do*, "the no-fault insurer paid exactly what it was required to pay: basic economic loss benefits 'without regard to fault.'" *Do*, 779 N.W.2d at 860 (quoting *Milbrandt*, 372 N.W.2d at 705).

## D E C I S I O N

Because we hold that the plain language of the no-fault act and collateral estoppel do not prevent an insured from seeking economic-loss benefits in an arbitration proceeding after the insured has litigated economic-loss damages in a negligence action, we reverse the district court's vacation of Lennartson's arbitration award and affirm the district court's decision to uphold Foss's arbitration award.

**Reversed (A14-0132); Affirmed (A14-0224).**